FREDERICK GUYOT et al., Plaintiffs, v AL CHARYN, INC., et al., Appellants-Respondents, and WILMOD COMPANY, INC., Respondent.

AL CHARYN, INC., Third-Party Plaintiff-Appellant-Respondent, v JEROME MACKEY'S JUDO, INC., Doing Business as JEROME MACKEY'S JUDO SCHOOL, Third-Party Defendant-Respondent-Appellant.

JEROME MACKEY'S JUDO, INC., Fourth-Party Plaintiff, v SHINICHI MIYAZAKI, Fourth-Party Defendant.

JEROME MACKEY'S JUDO, INC., Fifth-Party Plaintiff, v NISSHO-IWAI AMERICAN CORP., Fifth-Party Defendant.

YORK BROS. WHOLESALE HARDWARE CO., INC., Defendant and Second Third-Party Plaintiff-Appellant, v GARDINER STEEL CORP. et al., Second and Third-Party Defendants-Respondents-Appellants.

J. GERBER & COMPANY, INC., Second and Third-Party Defendant and Second and Fourth-Party Plaintiff-Appellant, v ATAKA AMERICA, INC., Second and Fourth-Party Defendant, and MITSUI & COMPANY, U. S. A., INC., Second and Fourth-Party Defendant-Respondent.

First Department, July 10, 1979

## APPEARANCES OF COUNSEL

*Joseph D. Ahearn* and *Michael Majewski* of counsel *(J. Robert Morris,* attorney), for Al Charyn, Inc., appellant-respondent and third-party plaintiff-appellant-respondent.

*Walter G. Evans* of counsel *(Alfred V. Norton, Jr.,* with him on the briefs; *Evans, Orr, Pacelli, Norton & Laffan, P. C.,* attorneys), for York Bros. Wholesale Hardware Co., Inc., appellant.

*Richard C. Browne* of counsel *(Costello & Shea,* attorneys), for Gardiner Steel Corp. and another, second and third-party defendants-respondents-appellants.

*Gerald A. Greenberger* of counsel *(Joseph L. Forstadt* with him on the brief; *Peter M. Pryor,* attorney; *Stroock & Stroock & Lavan,* appellate counsel), for Jerome Mackey's Judo, Inc., third-party defendant-respondent-appellant.

*Remo J. Acito* of counsel *(Elinore B. Klein* with him on the

brief; *Acito & Klein, P. C.,* attorneys), for Wilmod Company, Inc., respondent.

*William F. McNulty* of counsel *(Anthony J. McNulty* with him on the brief; *John W. McClancy,* attorney), for Ataka America, Inc., second and fourth-party defendant.

*John T. Hamilton, Jr.,* of counsel *(Frank E. Maher,* attorney), for Mitsui & Company, U. S. A., Inc., second and fourth-party defendant-respondent.

### OPINION OF THE COURT

SILVERMAN, J.

■ I agree with Justice LUPIANO's conclusions except that I would dismiss the cross claim against the third-party defendant Jerome Mackey's Judo, Inc. and grant 100% indemnification to the other defendants as against defendant Gardiner-Gerber, thus allocating 100% of the liability to Gardiner-Gerber.

■ Justice SANDLER suggests that our decision granting 100% indemnification to the retailer and intermediate wholesaler represents survival of the distortions that existed before the development of the present doctrine of strict products liability, citing *Martin v Dierck Equip. Co.* (43 NY2d 583, 590). However, as I think we all agree, while an injured plaintiff's claim based on strict products liability against persons with whom he has no contractual privity is a tort claim, parties like a retailer or intermediate wholesaler may still have a contractual breach of warranty claim against persons with whom they are in contractual privity.

■ I agree with Justice LUPIANO that Miyazaki was an independent contractor and not an employee of Mackey and that thus Mackey is not liable on principles of *respondeat superior* to third parties for injuries caused by Miyazaki's negligence in the performance of this work which was not inherently dangerous. The holding by the Workmen's Compensation Board that Mackey was liable to plaintiff employee as an employer for workmen's compensation under the Workmen's Compensation Law is not necessarily inconsistent with this as the issue is somewhat different. (E.g. Workmen's Compensation Law, § 56.)

For the same reason the alleged admission in Mackey's pleadings that plaintiff employee's injuries "arose out of and in the course of plaintiff's employment for" Mackey does not

preclude Mackey's contention that plaintiff was Miyazaki's employee for purposes of third-party liability; that pleading admission was made in the course of a counterclaim based on Mackey's payment under the workmen's compensation award.

Justice LUPIANO's opinion appears to base Mackey's liability in this case on a finding that Mackey was negligent in hiring Miyazaki because Miyazaki was incompetent to do the work. I do not believe that issue is properly in the case; it was not raised by the pleadings and I do not think it was litigated, nor did the Trial Judge make such a finding. I therefore think that there is no basis in the present litigation to hold Mackey liable.

The judgment of the Supreme Court, New York County (FEIN, J.), entered December 23, 1977, in plaintiffs' favor in the sum of $150,000, adjudging second third-party defendants Gardiner Steel Corp. and J. Gerber & Company, Inc. to be liable for 50%, defendant Al Charyn, Inc. to be liable for 20%, defendant York Bros. Wholesale Hardware Co., Inc. to be liable for 20% and third-party defendant Jerome Mackey's Judo, Inc. to be liable for 10%, should be modified, on the law, in the following respects:

A. The apportionment of the percentages of liability among all the defendants in said judgment is stricken;

B. All claims by any defendant against third-party defendant Jerome Mackey's Judo, Inc. for contribution or indemnity, are dismissed; and as among defendants and third- and fourth-party defendants, no portion of the liability shall be apportioned against said third-party defendant Jerome Mackey's Judo, Inc.;

C. Judgment on the merits is granted in favor of defendant Al Charyn, Inc. on its claim for full indemnity against defendant York Bros. Wholesale Hardware Co., Inc., and in turn judgment on the merits is granted in favor of defendant York Bros. Wholesale Hardware Co., Inc. on its claim for full indemnity against second third-party defendants Gardiner Steel Corp. and J. Gerber & Company, Inc.;

D. Any defendant or third-party defendant who has paid more than its share of the judgment as adjudicated herein shall be reimbursed therefor by third-party defendants who have paid less than their share thereof;

And the judgment is otherwise affirmed, without costs.

LUPIANO, J. (dissenting in part). During the course of the

trial of this negligence action, before a jury and toward the end of plaintiffs' case, the parties stipulated that the masonry nail, a particle of which apparently struck plaintiff Frederick Guyot in an eye, was defective and that plaintiffs have judgment for $150,000. The jury was discharged and the trial proceeded for determination and apportionment of liability among the defendants. Prior to trial, a workmen's compensation award was rendered in favor of plaintiff Frederick Guyot, the injured workman, against Jerome Mackey's Judo, Inc., holding the latter to be the employer of said plaintiff. The trial court appropriately found that the accident which occurred on August 14, 1972, was concurrently caused by the failure to observe the precaution of wearing safety goggles while utilizing masonry nails at the work site, the use of defective masonry nails, and the inappropriate use of masonry nails when ceramic tile was involved. Aside from the stipulation that the masonry nail, a piece of which struck plaintiff Frederick Guyot, was defective, there was expert testimony that the defect resided in the design of the nail, to wit, it was too long for its width. Liability was apportioned by the trial court under *Dole v Dow Chem Co.* (30 NY2d 143) for negligence found to exist on the part of Jerome Mackey's Judo, Inc. as employer (10%) and on the part of the retail store from which the nail was purchased, defendant Al Charyn, Inc. (20%), and the suppliers in the chain of commerce, respectively, York Bros. Wholesale Hardware Co. (20%), Gardiner Steel Corp. and J. Gerber & Company, Inc. (50%). The negligence of Jerome Mackey's Judo, Inc. resided in its failure to provide or to advise the use of safety goggles and to provide against the use of masonry nails when ceramic tile is involved. As to the retailer and the supplier, the trial court viewed the defect of the masonry nail to be patent, that is, the description of the dimensions of the nail on the box would sufficiently alert the retailer and the suppliers to the defect and their failure to take remedial and precautionary steps under such circumstances constituted negligence.

While concluding that the issue of Jerome Mackey's Judo, Inc.'s being plaintiff Frederick Guyot's employer was foreclosed by the workmen's compensation award, the trial court perspicaciously allowed the record to reflect the full circumstances of employment and control of the injured plaintiff as it related to the work site. Thus, the record discloses that Jerome Mackey's Judo, Inc. utilized the services on a prior

occasion (in connection with the renovation of premises in the Bronx of a judo school) of Shinichi Miyazaki, an artist, who, while not a carpenter by trade, made money from time to time doing odd carpentry jobs. Jerome Mackey's Judo, Inc. having leased space in the McAlpin Hotel in Manhattan, again hired Miyazaki with respect to the renovation of the leased space and converting same into a judo school. Miyazaki was given a lump sum in payment for the job and he hired several of his friends as his crew, the same procedure as followed in his previous hiring by Jerome Mackey's Judo, Inc. In this case, one of the individuals hired was plaintiff Frederick Guyot. No supervision or control over Miyazaki and his men in the performance of the work by Jerome Mackey's Judo, Inc. is revealed on this record. Patently, Miyazaki was an independent contractor who exercised control and direction of plaintiff Frederick Guyot in the performance of the carpentry work at the job site.

Expert testimony elicited at the trial disclosed that it was customary for carpenters to provide protection when masonry nails are utilized in the form of goggles because of the hardness of this type of nail. Further, it was disclosed that such nails should never be used on a ceramic tile.

"A basic exception to the rule that an employer is not liable for the acts or omissions of an independent contractor is the general principle that one who employs an independent contractor to do work which the employer should recognize as necessarily resulting in a peculiar risk of bodily harm to others, unless special precautions are taken, is subject to liability for injuries caused by the contractor's negligence. In such case, a primary, nondelegable duty is imposed on the employer * * * The rule is sufficiently broad to embrace not only work which is inherently or intrinsically dangerous, but also work which will, in the ordinary course of events, occasion injury to others if certain precautions are omitted but which may, as a general rule, be executed with safety if those precautions are adopted" (28 NY Jur, Independent Contractors, § 24).

Ordinarily, the renovation and alteration of a structure is not intrinsically dangerous work. Miyazaki testified that Jerome Mackey's Judo, Inc. was seeking a "nonprofessional" carpenter, i.e., one who was not a carpenter by trade, to employ in this renovation work. A carpenter is an artisan, a

skilled workman (see *Matter of Beach v Velzy,* 238 NY 100). The record is devoid of any evidence that Jerome Mackey's Judo, Inc. knew that Miyazaki was not a carpenter by trade, other than its looking to employ a "nonprofessional" carpenter. No officer or employee of Jerome Mackey's Judo, Inc. testified at trial. Thus, an inference may be drawn from the record that this corporation in an effort to minimize cost, determined to and did, in fact, hire as an independent contractor, an individual who it knew was not a carpenter by trade, or, at the least, was indifferent to this fact. Accordingly, in employing Miyazaki as an independent contractor to do the carpentry work, Jerome Mackey's Judo, Inc. could not justifiably rely on the presumption of skill and expertise which inheres in the employment of a carpenter by trade. Customarily, the renovation of premises which of necessity requires the erection of new walls will involve the use of masonry nails. The warranted imputation to Mackey of an inability to rely on the requisite skill and expertise of a carpenter by trade, thus serves to put Mackey on notice that a higher duty devolved upon it as employer than might otherwise be warranted, to the extent that Mackey should have instructed or reminded Miyazaki or his men to observe the precaution of safety goggles while utilizing masonry nails.

Indeed, the trial court, sitting as finder of both fact and law, predicated liability against Mackey on its duty to provide or advise the use of goggles when masonry nails were to be hammered and to advise or protect against the use of masonry nails when ceramic tile was left upon concrete and the nail was to strike into the tile surface. To reiterate, there was expert testimony that a masonry nail should never be used on ceramic tile. It was incumbent upon Miyazaki to remove the tile from the concrete wall surface before attempting to nail the studs to the concrete wall with the masonry nails. Leaving the smooth tile surface on top of the concrete surface created a condition in which the use of a masonry nail was ill-advised. While the trial court apparently attributed liability for Miyazaki's negligence to Mackey on the ground that an employer-employee relationship existed between them, we attribute liability on the ground that although Miyazaki was not an employee of Jerome Mackey's Judo, Inc., but an independent contractor, nevertheless the circumstances are such that Mackey as employer is liable for the negligent omissions of

the independent contractor herein.[1] Patently, a duty devolved upon Mackey to utilize due care in engaging a competent contractor and in employing an independent contractor with knowledge that he does not possess the skill requisite for proper performance of the work or with indifference as to the qualifications of the contractor, Mackey may not avoid liability for the contractor's negligence causing injury to a third person (see *Berg v Parsons,* 84 Hun 60, later appealed 90 Hun 267, revd on other grounds 156 NY 109; *Hawke v Brown,* 28 App Div 37; see, also, *Kuhn v Carlin Constr. Co.,* 154 Misc 892, affd *sub nom. Kuhn v City of New York,* 248 App Div 582, revd on other grounds 274 NY 118, reh den 277 NY 651; Restatement, Torts 2d, § 411, Comment *c.* When is employer chargeable with negligence in hiring careless, reckless, or incompetent independent contractor, Ann. 78 ALR3d 910). Miyazaki, the independent contractor, additionally testified that there was no discussion between Mackey and himself relating to his training as a carpenter or whether Miyazaki belonged to a carpenter's union. If one hires a carpenter by trade, by vocation, then it may be assumed that an elaborate investigation as to the competence of the carpenter is not required absent actual knowledge of some fact tending to demonstrate incompetence or appreciation (actual or constructive) of a peculiar danger imposed by the job assigned. However, if one hires a carpenter by experience and not by trade, by vocation, then it may similarly be assumed that a somewhat more reasonably elaborate investigation as to competence must be undertaken. As a corollary, a duty may devolve on the employer to exercise a more full appreciation of the circumstances inherent in the job to be assigned to the contractor. To sum up: "since an employer has the right to place reliance upon the supposed qualifications and good character of the contractor, and is not bound to anticipate misconduct

---

1. Any *res judicata* or collateral estoppel effect of the workmen's compensation award specifying Jerome Mackey's Judo, Inc. as employer of the injured workman, plaintiff Frederick Guyot, would not foreclose Mackey from presenting proof that Miyazaki was not a coemployee of the injured workman whose negligence was responsible for the injury to his fellow employee, which negligence is attributable to the employer Mackey, but that Miyazaki was an independent contractor who exercised exclusive control over the injured employee during the performance of this renovation work. This demonstration of actual exclusive control by one occupying an independent contractor status is made possible despite the workmen's compensation award by the existence of the loaned servant doctrine. (See analysis of the loaned servant doctrine in 37 NY Jur, Master and Servant, § 154; see, also, *Irwin v Klein,* 271 NY 477, 485-486; *Pichardo v Kreger Truck Renting Co.,* 57 AD2d 177; *Carinha v Action Crane Corp.,* 58 AD2d 261, 269-272.)

on his part, the employer is not liable on the ground of his having employed an incompetent or otherwise unsuitable contractor unless it also appears that he either knew, or in the exercise of reasonable care might have ascertained, that the contractor was not properly qualified to undertake the work" (28 NY Jur, Independent Contractors, § 17).

Regarding the remaining defendants, the retail store from which the masonry nails were purchased and the intermediate suppliers of these nails in the chain of commerce, it is noted that the nails were contained in sealed boxes which in turn were contained in sealed cartons. The boxes contained the legend that the nails were manufactured in Japan for second third-party defendant Gardiner Steel Corp., a wholly-owned subsidiary of second third-party defendant J. Gerber & Company, Inc. and the dimensions of the nails were also imprinted on the boxes. As noted above, an expert testified that the masonry nails were defectively designed in that they were too long for their width and thus did not conform to American standards. No justification appears in the record for attributing such expertise to the retailer Al Charyn, Inc. or the intermediate suppliers. Patently, such expertise is attributable to the manufacturer of the nails or a supplier who specializes in such nails. The retailer and the intermediate supplier from whom it purchased the nails, York Bros., are not within the definition of manufacturer or such specialized supplier. (The manufacturer of these defectively designed masonry nails is unknown.) On this record, however, we do not find these sellers owed a duty, the breach of which amounted to negligence.

"Breach of warranty, express or implied, is, of course, a classic ground of recovery for product-caused injury. It is to be noted at the outset that because breach of warranty liability is a form of absolute liability, recovery on this ground obviates a number of the difficult problems of proof which arise in negligence cases, and thus the breach of warranty approach has a preferred position as a basis for establishing liability for product-caused injury" (47 NY Jur, Products Liability, § 66).

The defective design of the masonry nails serves as a basis for a finding that this product was not reasonably fit for the purpose for which it was designed, and was, therefore, not merchantable.[2] The sellers of such nails in the stream of commerce are, therefore, guilty of a breach of implied war-

---

2. See section 2-314 of the Uniform Commercial Code entitled "Implied Warranty:

ranty of merchantability. (See *Singer v Walker,* 39 AD2d 90, affd 32 NY2d 786; 1 Hursh, American Law of Products Liability, § 2:68; Uniform Commercial Code, § 2-314; see, also, *Codling v Paglia,* 38 AD2d 154, affd in part and revd in part on other grounds 32 NY2d 330.) Accordingly, absolute liability is imposed on the retailer, Al Charyn, Inc. for breach of the implied warranty of merchantability and it is entitled to indemnity from the supplier with whom it is in privity, York Bros. (See *Vulpis v City Line Lbr. Co.,* 39 Misc 2d 842, affd 19 AD2d 947.) York Bros. in turn is entitled to indemnity from the distributor with whom it is in privity, Gardiner Steel Corp. The latter corporation, a subsidiary of J. Gerber & Company, Inc., has apparently been liquidated. Testimony in the record demonstrates that Gardiner purchased all its nails from the parent company, J. Gerber & Company, Inc., and it is clear that the trial court on a pragmatic basis viewed these two corporations as one entity for purposes of this litigation.

Where two or more causes concur to cause a tort, both contribution and indemnification can be sought in the same action (Siegel, NY Prac, § 172). Thus, for example, should the retailer herein pay any part of the judgment, he is entitled to recover whatever he pays from York Bros., his immediate supplier, because between them there is an indemnification relationship. Also, he is entitled to recover up to 10% of the judgment (provided he pays same) from Mackey, the actively negligent tort-feasor, in which event, of course, the amount recoverable by way of indemnity would be correspondingly diminished. York Bros., in turn, should it pay any part of the judgment by virtue of having to indemnify the retailer, is entitled to recover that amount from the second third-party defendants Gardiner Steel and J. Gerber & Company.

Pertinent to the trial court's dismissal of J. Gerber & Company, Inc.'s fourth-party complaint against its alleged suppliers Ataka America, Inc. and Mitsui & Company, U. S. A., Inc., there is testimony that Ataka America, Inc. did not use the type of box (with respect to color) in which the defective masonry nails were enclosed. A basis is thus afforded for removing Ataka from the chain of commerce regarding these nails. The only basis upon which Mitsui & Company can be held in is the assertion by J. Gerber & Company, Inc. that it purchased its nails only from Ataka and Mitsui. The prob-

---

Merchantability; Usage of Trade." See, also, section 2-315 of the Uniform Commercial Code entitled "Implied Warranty: Fitness for Particular Purpose."

lem here is that the corporate records of Gardiner-Gerber relevant to these masonry nails are apparently no longer in existence. The trial court dismissed the impleader complaints against Ataka and Mitsui on the basis of lack of sufficient proof with respect to the further course of these defective nails in the stream of commerce. As the trial court was sitting as finder of fact and as this issue involved basically oral testimony, the issue becomes one of credibility. Accordingly, we find no justification on this record to depart from the trial court's findings in this regard. Gardiner Steel Corp. and J. Gerber & Company, Inc., therefore, find themselves in a position of being responsible for 90% of plaintiffs' judgment, assuming contribution by Mackey of its 10% share. In conclusion, we recall the apt observation by the trial court that "the evidence is sufficient to establish that it was Gardiner who launched (the defective nail) into the stream of commerce in the United States * * * [I]t is their box, and it is sufficient evidence in the case, by way of the name on the box, the testimony concerning the purchase by York through Gardiner, and other evidence in the case, to compel the conclusion that Gardiner was responsible for launching it into the stream of commerce."

Regarding the view of the majority which would have the effect of removing Jerome Mackey's Judo, Inc. from the ambit of liability, such view is predicated on three factors—the pleadings do not raise the issue of Mackey's negligence in hiring Miyazaki, that issue was not litigated, and the Trial Judge did not make a finding as to Mackey's negligence in such hiring. Considering these factors in inverse order, it must initially be noted that the Trial Judge not only did not make a finding as to Mackey's negligence in hiring, he also did not make a finding as to the independent contractor status of Miyazaki. This fact arose from the circumstance that the trial court would not deem such findings as necessary in light of the position which it adopted regarding the significance of the workmen's compensation award. However, the Trial Justice being well versed in the law and an experienced jurist, permitted an ample record to be made herein with a view toward appellate consideration of this complex litigation.

Thus, the last factor cited by the majority, the absence of a finding as to Mackey's negligence in hiring, cuts both ways and, if correct as a determining proposition of law herein, would similarly frustrate the endeavor of the majority to let

Mackey out as no finding was made on the independent contractor status of Mackey's. Also the power of this court to make findings of fact in substitution of contrary reversed findings of a trial court, or to make new findings, where appropriate, is well recognized (see *Bernardine v City of New York,* 294 NY 361, 366-367; *York Mtge. Corp. v Clotar Constr. Corp.,* 254 NY 128, 133-134).

"The Appellate Division stands in essentially the same position as the trial judge. Whatever the trial judge can do, the Appellate Division can do on appeal. That is the general rule. In a jury case, where the trial judge can set aside a verdict and grant a new trial on the ground of the 'weight of the evidence', so can the Appellate Division. If the case is so one-sided as to warrant judgment as matter of law for one side, the trial judge can grant it; so can the Appellate Division. If the case is *judge-tried,* the trial judge can, on a post-trial motion, *make new findings* and change the decision accordingly * * * The Appellate Division can do the same" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 5522, C5522:1; emphasis supplied).

As to the assertion that the issue of whether negligent hiring was litigated, scrutiny of the record unequivocally demonstrates that it was. For example, on cross-examination of Miyazaki by counsel for York Bros. Wholesale Hardware Co. and later by counsel for Gardiner Steel Corp. and J. Gerber & Company, Inc., specific inquiry was made as to whether Mackey in hiring Miyazaki inquired as to the latter's expertise in carpentry. Also, general inquiry into the manner of hiring was made by counsel for Al Charyn, Inc., on cross-examination of Miyazaki. The positions of Al Charyn, Inc. and Gardiner Steel Corporation—J. Gerber & Company, Inc. were eloquently made clear on their motions at the end of the trial when they conjoined in arguing that "the only negligence that has been shown here is the negligence of the Mackey Company. They wanted to do a job cheaply. If they had hired competent, experienced supervision, there would not have been this accident. They instead go out and hire a man who is only a part-time carpenter * * * and the results followed."

Finally, relevant to the first factor cited by the majority that the issue of negligent hiring was not raised by the pleadings, it suffices to note that CPLR 3025 (subd [c]) provides that "[t]he court may permit pleadings to be amended before or after judgment to conform them to the evidence, upon such

terms as may be just including the granting of costs and continuances".

Professor Siegel aptly notes: "This is really an adjunct of the liberalization of pleadings. Its purpose is to have the final judgment dictated by what the evidence actually reveals at the trial rather than by what the pleadings and bill of particulars alleged it would be. The courts are today quite free with the amendment as long as no party can claim prejudice because of it * * * As long as the papers in the case advised the other side sufficiently of the transaction, occurrence or event out of which the claim or defense arises—to such an extent that a diligent lawyer could be deemed to have been on notice that the matter now sought to be changed or added by amendment *could have reasonably* been *expected to arise at the trial*—the purpose of the rule is fulfilled and the amendment permissible" (Siegel, NY Prac, § 404; emphasis supplied). Perusal of the third-party complaint of Al Charyn, Inc. against Mackey's discloses that in article "Fifth", it is alleged in most general terms that "any injury or damages sustained by the Plaintiff, Frederick Guyot, was caused in whole or in part by the negligence of the Third Party Defendant, Jerome Mackey's Judo, Inc., d/b/a Jerome Mackey's Judo School, and that under the facts and circumstances herein, the Third Party Plaintiff, Al Charyn, Inc., will have the right to have a judgment over in whole or in part against the Third Party Defendant * * * for all or a part of any damages or judgment that may be assessed against * * * Al Charyn, Inc., herein."

Parenthetically, it is also noted that the majority is silent as to the alternative basis delineated above for fixing liability upon Mackey, despite the independent contractor status of Miyazaki, to wit, that Mackey was put on notice that a higher duty devolved upon it as employer than might otherwise be warranted, to the extent that Mackey should have instructed or reminded Miyazaki or his men to observe the precaution of safety goggles while utilizing the masonry nails.

It is urged that the judgment appealed from should be affirmed insofar as it held the retailer, defendant Al Charyn, Inc. and the intermediate supplier, defendant York Bros. Wholesale Hardware Co., Inc. to be each 20% liable regarding the apportionment of liability among the defendants. The basis for this view emanates from the misconception that the majority has improperly determined that contribution may not be applied in a strict products liability case. This is not so.

The foundation of the majority's determination that defendants Al Charyn, Inc. and York Bros. Wholesale Hardware Co., Inc. are entitled to indemnity is the fact as so found by the majority that no action or conduct of these defendants under the *Dole v Dow* doctrine existed to serve as a basis for concluding that they should contribute to the "pot" respecting the liability of the defendants *inter se.* It may well be appropriate in a warranty case depending upon the evidence and circumstances disclosed for a *Dole v Dow* apportionment to occur (see *Hughes v Ataka Amer.,* 48 AD2d 808, 809; *Noble v Desco Shoe Corp.,* 41 AD2d 908, 909-910; cf. *Coons v Washington Mirror Works,* 344 F Supp 653). To reiterate, as aptly noted by Professor Siegel: "Each party's responsibility will be apportioned according to his 'equitable share' and 'relative culpability', regardless of theory, the mixture of theories, or the consistency of theories either among the apportionment claims or between them and the main claim. The contribution claim can thus be based on negligence, breach of warranty, breach of a statutory duty, strict products liability, or any other, as long as it contributed to the damages suffered by the person to whom the party seeking contribution has been found liable" (Siegel, NY Prac, § 172; see, also, *Doundoulakis v Town of Hempstead,* 42 NY2d 440).

Defendant Al Charyn, Inc. as retailer and defendant York Bros. Wholesale Hardware Co., Inc., its supplier and the intermediate distributor, must exercise reasonable care in their handling of products and this obligation obviously includes warning about discoverable hazards. The same is true of the other suppliers in the chain of distribution, to wit, defendants Gardiner Steel Corp. and J. Gerber & Company, Inc. We have determined that on the record the defect was in design and that the retailer and intermediate supplier could not reasonably have discovered the defect. The manufacturer can avoid many of these defects, the distributor or retailer cannot.[3] Indeed, sections 112 and 114 of the Draft Uniform Product Liability Law presented by the Department of Com-

---

3. The Insurance Services Office "Closed Claim Survey" conducted in 1976-1977 discloses that manufacturers account for 87% of the total product liability payment amount, while wholesalers and retailers account for 4.6%. As noted in the analysis of section 114 of the Draft Uniform Product Liability Law provided by Matthew Bender & Company, Inc. to Frumer and Friedman, Products Liability and developed by the Department of Commerce—Task Force on Product Liability (Fed Reg, Vol 44, No. 9, Jan. 12, 1979), "case law suggests that distributors and retailers of products often shift this cost on to the manufacturer through an indemnity suit."

merce, the final version of which is scheduled for publication in June of 1979 and which will be introduced into Congress for Federal enactment, and the analysis of such sections prepared by the drafters, support the reasoned result arrived at by the majority respecting the liability *inter se* of defendants Al Charyn, Inc., York Bros. Wholesale Hardware Co., Inc., Gardiner Steel Corp. and J. Gerber & Company, Inc.[4]

It is also clear on this record that for purposes of apportioning liability, defendant Gardiner Steel Corp., the wholly-owned subsidiary of defendant J. Gerber & Company, Inc., apart from the manufacturer was, inferentially, in the best position to prevent the risk and to affix liability on the manufacturer in respect of liability among the defendants *inter se.* To repeat, the defective nails were contained in boxes containing the legend that the nails were manufactured in Japan for defendant Gardiner Steel Corp. and it placed the nails in the stream of commerce in this country with the knowledge of their intended use. Indemnity here is not predicated on any theory of active and passive negligence, because the application of this test to a situation where strict liability in warranty is imposed is unnecessary. Negligence is irrelevant for determining liability in such a situation (see *Texaco, Inc. v McGrew Lbr. Co.,* 117 Ill App 2d 351; 2 Frumer and Friedman, Products Liability, § 16A [4][b][i], p 3B-42; see, also, *Suvada v White Motor Co.,* 32 Ill 2d 612). Parenthetically, the tendency to equate strict liability in warranty and tort is exemplified by *De Crosta v Reynolds Constr. & Supply Corp.,* 49 AD2d 476).[5]

It is the general rule that a retailer (seller) suffering and paying a judgment against him by an injured person in a warranty action is entitled to indemnity from the party who sold the product to him under similar warranty *(McSpedon v Kunz,* 271 NY 131; 3A Frumer and Friedman, Products Liability, § 44.03 [1]). In *McSpedon v Kunz (supra)* the Court of Appeals, concerned with breach of implied warranty of fitness resulting in injury to plaintiff from eating unwholesome meat purchased by him from a retail butcher, who bought this meat from a wholesale dealer, who, in turn, purchased it from a meat packer, allowed judgment in favor of plaintiff against the retailer, with recovery by him over against the wholesalers and recovery by the latter over against the meat packer

---

4. *Ibid.*

5. See Frumer and Friedman: Products Liability, § 16A [4][a].

(see, also, *Davis v Radford,* 233 NC 283, 289). "Indemnity has also been given to a retailer against his seller where the retailer's liability was based on strict liability in tort" (3A Frumer and Friedman, Products Liability, § 44.03 [1]). Of course, "the active negligence of a defendant stands in the way of his getting indemnity, whether the action over is in warranty or negligence. 'Active' in this sense need not be limited to positive conduct, it may be found in nonaction coupled with knowledge of a defective condition, for in such a case, 'justice precludes recovery over—and this is true, whether we rely upon the doctrine that actual knowledge plus inaction equals active negligence, or upon the philosophy of natural justice and equal culpability, or upon the mandates of public policy' " (3A Frumer and Friedman, Products Liability, § 44.04).

The judgment of the Supreme Court, New York County (FEIN, J.), entered December 23, 1977, in plaintiffs' favor in the sum of $150,000, adjudging second third-party defendants Gardiner Steel Corp. and J. Gerber & Company, Inc. to be liable for 50%, defendant Al Charyn, Inc. to be liable for 20%, defendant York Bros. Wholesale Hardware Co., Inc. to be liable for 20% and third-party defendant Jerome Mackey's Judo, Inc. to be liable for 10%, should be modified, on the law, to the extent of reversing that portion thereof which apportioned percentages of liability among the said defendants other than third-party defendant Jerome Mackey's Judo, Inc. and to grant defendant Al Charyn, Inc. indemnity against defendant York Bros. Wholesale Hardware Co., Inc. and, in turn, to grant the latter indemnity against second third-party defendants Gardiner Steel Corp. and J. Gerber & Company, Inc., thereby effectively apportioning liability as follows: 10% against third-party defendant Jerome Mackey's Judo, Inc., and 90% against the second third-party defendants, and, as so modified, should be affirmed, without costs and disbursements, to defendants Al Charyn, Inc. and York Bros. Wholesale Hardware Co., Inc. against the second third-party defendant.

SANDLER, J. (dissenting in part). The facts are quite fully set forth in the opinion of Mr. Justice LUPIANO.

Two issues are presented. The first concerns the liability of the defendant Jerome Mackey's Judo, Inc. (Mackey), and the second, the correctness of the trial court's determination apportioning liability among the retailer Al Charyn, Inc., and the two suppliers in the chain of commerce, York Bros.

Wholesale Hardware Co., Inc. (York) and Gardiner Steel Corp. and J. Gerber & Company, Inc. (Gardiner).

The issue as to Mackey is a close one. Although Justice LUPIANO's analysis of the pertinent evidence is cogent and persuasive, I have come to the reluctant conclusion that the theory of liability he developed was not fairly presented by the pleadings, was not clearly understood by the parties to be an issue in the case and was not really litigated. Accordingly, I am in agreement with the court's opinion that the apportionment of liability to Mackey must be vacated.

I am in full agreement with the trial court's determination apportioning liability among the retailer and the other suppliers and perceive no error in the nature of the apportionment. The overturning of this aspect of the judgment, and the court's conclusion that the entire responsibility rests upon the first supplier, Gardiner, under principles of indemnification, seems to me to misperceive the law in this area as it has developed in the wake of *Dole v Dow Chem. Co.* (30 NY2d 143).

The precise issue here was addressed by the court in two previous cases, *Noble v Desco Shoe Corp.* (41 AD2d 908) and *Hughes v Ataka Amer.* (48 AD2d 808). In both cases this court squarely held that the principle of apportionment set forth in *Dole* was applicable to breach of warranty cases.

In *Noble,* the following was said (pp 909-910): "In such connection, we have considered the contention made here that the rule of apportionment laid down in *Dole* should not be extended to breach of warranty cases; but conclude that no distinction should be drawn between actions grounded in negligence and those based on breach of warranty. (Cf. *Coons v Washington Mirror Works,* 344 F. Supp. 653.)"

In *Hughes,* the facts were strikingly similar to those presented here and in all significant respects the issue presented was identical. The court noted (p 809) that it was "a strict products liability case, not to be complicated by issues of negligence" and went on to say: "The defect having been concealed and being a substantial factor in the injury, and the product having been used for the purpose sold, it would have been possible to hold more than one defendant liable. (See *Codling v Paglia,* 32 NY2d 330; *Valez v Craine & Clark Lbr. Corp.,* 32 NY2d 117.) A charge under *Dole v Dow Chem. Co.* (30 NY2d 143), to provide a basis for apportionment of recovery was rejected, the court holding it improper in a warranty

case. This court had expressly held to the contrary in *Noble v Desco Shoe Corp.* (41 AD2d 908)."

The reference in the court's opinion to a concealed defect is hardly a significant distinguishing factor. If anything, the presence of a concealed defect would be a circumstance supporting indemnification. (Cf. *Farr v Armstrong Rubber Co.,* 288 Minn 83.)

Finally, in a case involving the right of apportionment among parties found strictly liable for abnormally dangerous activities *(Doundoulakis v Town of Hempstead,* 42 NY2d 440, 451), the Court of Appeals made the following pertinent comment: "Extended discussion is not needed. Since adoption of the new CPLR article 14 (L 1974, ch 742), equitable apportionment of damages may be claimed among 'persons who are subject to liability for damages for the same * * * injury to property' (CPLR 1401). Nowhere is it required that the liability be predicated upon negligence (see Twentieth Ann Report of NY Judicial Conference, 1975, p 215; 2A Weinstein-Korn-Miller, NY Civ Prac, par. 1401.13; McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 1401:3, p 362; see, also, *Hughes v Ataka Amer.,* 48 AD2d 808; *Noble v Desco Shoe Corp.,* 41 AD2d 908, 909-910)."

Although the issue in *Doundoulakis* was clearly different from that presented here, the citation in the opinion of this court's decisions in *Noble* and *Hughes* is surely significant and represents the clearest expression of opinion on the question by the Court of Appeals.

The clear import of this line of cases is further buttressed by the parallel development in this State of the doctrine of strict products liability. As the Court of Appeals noted in *Martin v Dierck Equip. Co.* (43 NY2d 583, 590) this development has made unnecessary "the distortions previously required to permit injured plaintiffs to recover from those who put defective products into the stream of commerce." In the final analysis, the conclusion of the court in this case represents a survival, inappropriate under the circumstances, of one of the most important of those distortions, that which required someone who sustained injury from a defective product to sue first the immediate retailer who was then to seek indemnification from his supplier, and so forth down the line.

It does not necessarily follow from the foregoing that indemnification is now unavailable in all breach of warranty or

strict products liability cases. Certainly it is a disquieting thought to contemplate apportionment of liability between the manufacturer of a product with a concealed defect and a wholly innocent retailer. (See *Farr v Armstrong,* 288 Minn 83, *supra;* cf. *All-Tronics, Inc. v Ampelectric Co.,* 44 AD2d 693.) Nor is it easy to accept as just an apportionment between a retailer who sells spoiled canned goods and the manufacturer of the goods.

Conceivably, such circumstances may reasonably be found to come within the concept of vicarious liability, which has been explicitly excepted from the sweep of *Dole.* (See *Rogers v Dorchester Assoc.,* 32 NY2d 553.) On the other hand, the fair result in those situations might well be reached by an apportionment which fixes full responsibility on the manufacturer where it clearly would belong.

The facts presented here do not warrant any such exceptional treatment. The product in this case was inherently defective, a fact that could have been known to each of those involved in its movement to the ultimate consumer whether they in fact knew it or not. It may well be that Gardiner had the primary responsibility for knowing the nature of the product and for its introduction into the stream of commerce. That judgment was clearly implicit in the apportionment by the trial court.

I find here, however, no such extreme difference in responsibility among those who profited in the movement of the products to the consumer that would require a finder of the facts to apportion responsibility exclusively to the original supplier. The situation may well have been different if the manufacturer had been identified and was a party to the action.

For the reasons set forth above, I would modify the judgment below only to the extent of striking the imposition of liability on Mackey and otherwise affirm, distributing the percentage originally assigned to Mackey among the remaining defendants proportionately.

SULLIVAN and ROSS, JJ., concur with SILVERMAN, J.; SANDLER, J. P., and LUPIANO, J., dissent in part in separate opinions.

Judgment, Supreme Court, New York County, entered on December 23, 1977, modified, on the law, in the following respects:

A. The apportionment of the percentages of liability among all the defendants in said judgment is stricken;

B. All claims by any defendant against third-party defendant Jerome Mackey's Judo, Inc. for contribution or indemnity, are dismissed; and as among defendants and third- and fourth-party defendants, no portion of the liability shall be apportioned against said third-party defendant Jerome Mackey's Judo, Inc.;

C. Judgment on the merits is granted in favor of defendant Al Charyn, Inc. on its claim for full indemnity against defendant York Bros. Wholesale Hardware Co., Inc., and in turn judgment on the merits is granted in favor of defendant York Bros. Wholesale Hardware Co., Inc. on its claim for full indemnity against second third-party defendants Gardiner Steel Corp. and J. Gerber & Company, Inc.;

D. Any defendant or third-party defendant who has paid more than its share of the judgment as adjudicated herein shall be reimbursed therefor by third-party defendants who have paid less than their share thereof;

and the judgment is otherwise affirmed, without costs and without disbursements.