■ TUESDAY MUHAYMIN, as Administratrix of the Estate of SHAKIR MUHAYMIN, Deceased, Appellant, v CARLOS NEGRON, Respondent. — Judgment, Supreme Court, New York County (Rosen, J.), entered January 18, 1980, dismissing a wrongful death and personal injury action after a jury verdict, reversed, on the law and on the facts, and in the exercise of discretion, and remanded for a new trial, with costs to abide the event. After two weeks of intensive hospital care, Shakir Muhaymin, a six-year-old boy, died as a result of burns to his entire body sustained when he fell, under disputed circumstances, into a bathtub filled with scalding hot water. From the evidence presented at trial in this wrongful death and personal injury action, the jury could appropriately find, as indeed it did in response to specific questions, that the bathtub condition was a result of seriously defective bathroom appliances that over a period of time recurrently caused the tub to fill with scalding hot water, that the condition was not controllable by the family of the deceased, that the respondent landlord had notice of the hazardous condition and had failed to correct it. In response to the court's specific question as to whether the defendant's negligence was the proximate cause of the event, the jury responded in the negative. The critical issue on this appeal is raised by the plaintiff's claim that the court's charge on proximate cause was fundamentally erroneous. We agree that it was, and accordingly reverse the judgment entered below, and remand for a new trial. The plaintiff's principal thesis on the issue of proximate cause was that the deceased, one of six children ranging in age from 1 to 11, washed his hands after urinating, that the water from the sink faucet was hot, and that he was caused to fall back into the bathtub. Plaintiff's mother testified that she saw her son go into the bathroom to urinate, heard him doing so, and then heard a spurt of water followed by a scream and a splash. She then observed her son emerging from the bathroom soaked from head to toe. The mother also testified that the son told her in the hospital that he had turned on the sink faucet, that the water was hot and burned his hand, causing him to fall into the tub. In response to this testimony, defense counsel read from two entries in the hospital records which attributed to plaintiff's mother two different accounts: that (1) the deceased and a four-year-old brother had entered the bathroom when the deceased sat on the side of the tub

and fell backward into it, and (2) the deceased and his brother were playing in the bathroom when he fell into the tub. In addition, defense counsel introduced a sworn statement by plaintiff's mother to the medical examiner to the effect that the two boys were playing in the bathroom when the deceased fell into the tub. In substance, the court charged the jury with regard to proximate cause that the jury must find for the defendant unless they concluded that the injuries resulting in the death of deceased occurred when the deceased washed his hands, was startled by hot water, and then fell into the tub. In light of the entire evidence developed at the trial, both by the plaintiff and the defendant, this charge was unduly restrictive and a misstatement of the applicable law. A factual issue as to whether defendant's negligence was the proximate cause of the event was clearly presented by all of the various explanations adduced at the trial, whether proffered by plaintiff or defendant. Indeed if the trial had disclosed no specific evidence whatever with regard to the immediate circumstance that caused the boy to fall into the tub, or the jury had disbelieved all the accounts, the jury could have appropriately determined that the event was of a character reasonably foreseeable in an apartment occupied by six children, three of whom were one, four and six years old respectively. The record is not clear as to why the trial court charged as it did. As noted in the dissenting opinion, plaintiff's bill of particulars had detailed the events in a manner consistent with the above-described trial testimony adduced on plaintiff's behalf. If, as the dissenting opinion suggests, the trial court felt constrained as a result to instruct the jury to find for the defendant on the issue of proximate cause unless they accepted the plaintiff's testimony as to the events immediately leading to the boy's injuries, we believe that would have been erroneous under the circumstances, particularly in light of the fact that the alternative accounts advanced as impeachment by the defendant would have independently supported a finding for the plaintiff on the issue. We think it more likely that the trial court charged in accordance with his interpretation of the decision of the Court of Appeals in *Rivera v City of New York* (11 NY2d 856), an interpretation apparently shared by plaintiff's trial counsel, which, though plausible, seems to us basically erroneous. In *Rivera,* the evidence established that a nine-year-old boy sustained injuries when he fell into a bathtub filled with hot water. It was undisputed that the boy had fallen when he stood on the edge of the bathtub to reach a light cord. A closely divided Court of Appeals dismissed the complaint, concluding (p 857) that the hot water created the injuries for which damages were sought "but it did not cause the intervening act which was not foreseeable." Critical in our view is the comment that the act resulting in the injuries in *Rivera* "was not foreseeable." The court majority evidently determined that the defendant could not have reasonably foreseen the unusual behavior of the nine-year-old plaintiff that immediately led to his injuries. We do not believe that the *Rivera* holding is correctly applied here to exclude as a jury question whether it was reasonably foreseeable that the long-standing, dangerous condition alleged in an apartment occupied by six children, three of them of very tender years, might result in precisely the kind of injury that in fact occurred. In a recent decision, *Derdiarian v Felix Contr. Corp.* (51 NY2d 308, 315), the Court of Appeals set forth the controlling principles: "Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed. In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence (see *Parvi v City of Kingston,* 41 NY2d 553, 560; Restatement, Torts 2d, §§ 443, 449; Prosser, Law of Torts, § 44). If the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events,

or independent of or far removed from the defendant's conduct, it may well be a superseding act which breaks the causal nexus (see, e.g., *Martinez v Lazaroff,* 48 NY2d 819, 820; *Ventricelli v Kinney System Rent A Car,* 45 NY2d 950, 952, *supra; Rivera v City of New York,* 11 NY2d 856). Because questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve." The principles stated in *Derdiarian* apply with equal force where the intervening act is not that of a third person, but rather that of the injured party. (*Monell v City of New York,* 84 AD2d 717; see *Pagan v Goldberger,* 51 AD2d 508, 512.) Applying these principles to the instant case, we hold that the trial court's charge with regard to proximate cause was erroneous. It is not clear whether our dissenting colleagues agree or disagree with the above analysis of *Rivera,* or with the statement of the applicable law here advanced. The basic issue dividing the court appears to be whether under the circumstances presented, in the absence of an objection to the charge we find erroneous, this is an appropriate case for the court to exercise its power to correct "fundamental error" in the "interests of justice." (See *Rodriquez v Cato,* 63 AD2d 922; 4 Weinstein-Korn-Miller, NY Civ Prac, par 4017.09, pp 40-96, 40-97.) As to that question we note that this is an action arising out of the death of a six-year-old child as a result of what the jury found with ample supporting evidence to be the defendant's negligent conduct. The jury found for the defendant on the issue of proximate cause in response to an erroneous charge that severely confined and circumscribed the area of its appropriate consideration. When the record is examined as a whole, it seems at least possible, and realistically quite likely, that the issue would have been resolved in plaintiff's favor if the jury had been correctly instructed. We find in these circumstances a compelling basis for this court to exercise its power to correct "fundamental error" in the interests of justice. Accordingly, the judgment should be reversed and a new trial directed. Concur — Sandler and Carro, JJ. Bloom, J., concurs in the result only.

Birns, J. P., and Silverman, J., dissent in a memorandum by Birns, J. P., as follows: On an emotional approach to the facts of this case, it is not difficult to express an opinion, as the majority has, that the verdict of the jury was wrong and should be rejected in order to give the plaintiff a new trial. The determination of issues in a court of law, especially an appellate court, should not rest upon such an ephemeral basis. It should be based upon valid legal argument rooted in the record. An appellate court, among other things, is required to review the record and determine within the framework of the pleadings whether the issues were properly submitted to the jury, and whether the verdict is supported by the testimony adduced at trial or whether the verdict should be set aside as contrary to the weight of the evidence. The theory upon which the case was presented by the plaintiff in the trial court was that the fatal injuries sustained by the infant in falling into the bathtub were caused by a defective faucet in an adjacent sink. There was testimony offered through the child's mother (based upon what she heard at or about the time of the accident and upon a bedside statement by the child to the mother) that the sink faucet when manipulated by the child spurted hot water, causing the child to jump backwards and fall into the bathtub. The bathtub was filled with hot water and there was evidence to show that the bathtub drain on the bottom of the tub was clogged by falling plaster and that hot water could not escape through that drain. In addition, there was testimony that complaints regarding these conditions had been given to the defendant landlord. Through other witnesses and the hospital record the defendant established that the mother had stated at one time that the deceased child had lost his balance while seated on the

edge of the bathtub and fell backwards into the hot water, and yet another time she had stated that the deceased child had been startled by his brother, had backed up and slipped over the side of the tub. In an affidavit for the New York Medical Examiner, the mother and father averred that the deceased child had been playing with his younger brother and sliding on water on the bathroom floor immediately prior to the fatal accident. In responding to written interrogatories submitted by the court, the jury found specifically that in permitting the defective conditions complained of to prevail in the bathroom, the defendant was negligent, and that the defendant had notice of the defects in the bathroom. But the jury specifically rejected the claim, set forth in the third interrogatory, that "the faucet in the sink in the bathroom [was] the proximate cause of [the child's] falling into the tub and the cause of his injuries and death". The plaintiff offered no objection nor did she make any request concerning the court's instructions to the jury on the issue of proximate cause. It is now claimed, for the first time, that the court erred in that the instructions effectively required the jury to credit specifics of the mother's trial testimony as to the manner in which the accident occurred in order to find defendant's negligence was the proximate cause of the child's accident and death. We must note that the only evidence-in-chief introduced at the trial concerning the manner in which the accident occurred was that the child recoiled from hot water spurting from the sink and that this led directly to the fatal fall. The jury's rejection of the claim of negligence offered by the plaintiff that the defective faucet was the proximate cause of her son's fatal injuries is readily understandable. The testimony of the mother as to what she heard and what her child told her was viewed by the jury in light of contradictory statements, admissible for purposes of impeaching her credibility and not for the truth thereof. The contradictory statements made it difficult for the jury to accept plaintiff's claim that the defective faucet was the proximate cause of the child's injury. Our civil procedure mandates that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict stating the matter to which he objects and the grounds of his objection." (CPLR 4110-b; *Mullery v Ro-Mill Constr. Corp.,* 54 NY2d 888, revg 76 AD2d 802; *Passantino v Consolidated Edison Co. of N. Y.,* 54 NY2d 840.) The scope of our review is not unlimited (CPLR 5501, subd [a], pars 3, 4). There is no explicit authority in the Civil Practice Law and Rules to set aside a verdict in a lawsuit seeking damages "in the interest of justice" as this court is empowered to do in determining an appeal in a criminal case (CPL 470.15, subd 6, par [a]). It is true that even in the absence of objection an appellate court may correct "fundamental error" in the "interests of justice" (see *Rodriguez v Cato,* 63 AD2d 922). However, "fundamental error" is not so amorphous that its pseudopods should absorb any subjective notion of fairness (see Cardozo, Nature of the Judicial Process, p 106). The majority's reversal represents adoption of plaintiff's argument on appeal that the trial court committed fundamental error in its charge on proximate cause; that the trial court's instructions to the jury should have been broadened, apparently *sua sponte,* to encompass the possibility that the defendant's failure to repair the plumbing was a proximate cause of the child's fatal injuries, and that such a consequence was "foreseeable" (see *Pagan v Goldberger,* 51 AD2d 508). These omissions in the trial court's instructions did not constitute fundamental error. As will be discussed, the limited claim of plaintiff before the jury on the issue of proximate cause, as set forth in the third interrogatory, was part of a calculated trial strategy designed to achieve recovery despite an obstacle in the form of a Court of Appeals decision (*Rivera v City of New York,* 11 NY2d 856). In these circumstances, there was no error, either of commission or omission, by the trial court which impaired the merits of plaintiff's claim, no fundamen-

tal rule of law which was overlooked or decided erroneously by the court which, now, in the "interests of justice" would dictate intervention by this court (see Black's Law Dictionary [4th ed], p 638, "Fundamental Error"). The theory of proximate cause embodied in the third interrogatory was firmly established by the plaintiff long before the submission of the case to the jury. It was presented in plaintiff's opening. It was highlighted during the mother's testimony as she recited what she claimed she heard and what her child had told her. It was mentioned by the trial Judge during conferences with the attorneys for the respective parties and was presented as the main issue in the case in the court's instructions to the jury. Indeed, the theory was well spelled out in plaintiff's bill of particulars in the following language: "That the erratic action of the [sink] spigots spewing hot and scalding water upon the infant deceased suddenly and without warning, caused him to jump back, and lose his balance, thereby falling into the tub which was filled with hot and scalding water and causing his death of burns". It should be apparent that the new theory of liability now uncloaked by the plaintiff and grasped by the majority "was not fairly presented by the pleadings, and was not clearly understood by the parties to be an issue in the case and was not really litigated" (*Guyot v Al Charyn, Inc.*, 69 AD2d 79, 95 [Sandler, J., dissenting in part]). The majority misreads the record in finding the source of error to be in the trial court's reliance on *Rivera v City of New York* (11 NY2d 856, *supra*). It was plaintiff who initially advanced the possibly inaccurate assumption expressed in the language of the third interrogatory and who failed to invite the court's attention to the claim now made (see *People v Colon*, 54 NY2d 913). It is evident that plaintiff's counsel deliberately adopted this limited theory of the case in order to avoid the impact of the Court of Appeals decision in *Rivera*. Upon the facts of that case, set forth by the majority herein, the Court of Appeals stated (p 857): "This court has consistently held that the negligence complained of must have caused the occurrence of the accident from which the injuries flow * * * It is clear in the present case that the condition of the bathtub's plumbing was not the proximate cause of the accident. The hot water created the specific injuries for which damages were sought and determined the gravity of the consequences resulting from the accident, but it did not cause the intervening act which was not foreseeable * * * The accident was caused by the slipping of a wet boot while the child balanced on the curved edged of the bathrub." The *Rivera* case was recently cited with approval by the Court of Appeals in *Derdiarian v Felix Contr. Corp.* (51 NY2d 308, 315). While it may well be questioned whether the literal language of the *Rivera* decision remains viable, the point to be made here is that plaintiff's counsel deliberately adopted a trial strategy which would, if successful, produce a verdict invulnerable to attack under *Rivera,* the leading analogous case. It is also clear that plaintiff was unwilling to present the case to the jury without any evidence pertaining to the manner in which the accident occurred. Plaintiff's counsel resolved this dilemma by proceeding to the jury on the theory expressed in the language of the court's third interrogatory to the jury. The court's charge simply acknowledged plaintiff's limited theory of liability, a theory resulting from choice rather than inadvertence. Choice also explains plaintiff's failure to take exception to the court's instructions to the jury. Plaintiff's appeal, inspired by the ultimate failure of this course of action, is no more than a plea for an opportunity to recast counsel's trial strategy. The majority's disposition renders the trial, at which plaintiff was accorded full opportunity to pursue the claim now presented, a mere dress rehearsal for the presentation of the broader theory of liability. Accordingly, the judgment of Supreme Court, Bronx County (Rosen, J., upon jury verdict) entered January 18, 1980, which dismissed the complaint, should be affirmed.