MILICA BJELICIC, Individually and as Administratrix of the Estate of MILENKO BJELICIC, Deceased, Appellant, v LYNNED REALTY CORPORATION et al., Defendants, and SHELDON WARSHOW et al., Respondents.

ALMETER COLLINS, Individually and as Administratrix of the Estate of ESSEX COLLINS, Deceased, Appellant, v LYNNED REALTY CORPORATION et al., Defendants, and SHELDON WARSHOW et al., Respondents.

First Department, November 14, 1989

152

## APPEARANCES OF COUNSEL

*Charles A. La Torella, Jr.,* of counsel *(Kleinberg & Friedman,* attorneys), for appellants.

*Diane Ciccone* of counsel *(Wilson, Elser, Moskowitz, Edelman & Dicker,* attorneys), for respondents.

## OPINION OF THE COURT

ROSENBERGER, J.

Essex Collins and Milenko Bjelicic were employed by a contracting firm owned by Luis Garcia to do exterior painting on a 10-story building in Manhattan. The scaffold on which the men were working was not properly secured and when Bjelicic bent over to pick up something, the scaffold moved away from the building wall. Bjelicic fell to his death. Collins, who unsuccessfully tried to save him, suffered psychological injuries which led to a psychiatric hospitalization. Thereafter, he remained disorganized and incoherent with paranoid persecutory delusions, and was unable to work at all. During the pendency of this appeal, Collins died and his wife was substituted as administratrix of his estate.

Appellants' claims against most of the defendants were settled prior to trial. A jury trial, however, was had on the remaining claims against defendants-respondents Sheldon Warshow and the two Warshow corporations. It was established at trial that respondent Warshow, a licensed rigger, had lent a copy of his license to Garcia in violation of Administrative Code of City of New York § 26-138, which is a

misdemeanor punishable by a fine and not more than six months' imprisonment (Administrative Code § 26-140). A license was needed to show to the building's owner so that Garcia would be hired for the job, and to post at the site as required by law. Garcia had worked for Warshow as a subcontractor for a five-month period in 1978 and, because of their prior working relationship, Warshow agreed to lend not only his license, but a scaffold and rigging equipment to Garcia as well, all free of charge. Warshow wrote the location and date of the job on the copy of his license to prevent Garcia from using it at any other jobsite. Garcia, however, did not use Warshow's equipment on the job. Even though Warshow knew when and where Garcia was working, he did not visit the jobsite or provide any supervision of Garcia's work.

At the close of the evidence, the court dismissed appellants' claims under Labor Law § 240 and only permitted those actions based on common-law negligence to go to the jury, which returned a verdict in respondents' favor. Appellants contend that Warshow was subject to absolute liability under Labor Law § 240 because, by lending his rigger's license to Garcia, he incurred a duty to supervise the rigging of the scaffold.

In support of this argument, appellants rely principally on *Kelly v Diesel Constr. Div.* (35 NY2d 1 [1974]) and *Russin v Picciano & Son* (54 NY2d 311 [1981]). In *Kelly v Diesel Constr. Div.,* the Court of Appeals affirmed a judgment against a general contractor, as a matter of law, based on the jury's finding of negligence solely against a subcontractor. The court noted that the general contractor "undertook to furnish, maintain and operate the hoist" but, through various intermediate subcontracts, had delegated responsibility for supply and maintenance of the hoist "particularly its brakes and other safety devices" to the hoist company, which inspected the equipment before installation and regularly thereafter *(supra,* 35 NY2d, at 4-5). Nevertheless, the general contractor could not escape statutory liability by delegation of its duties to a subcontractor.

In *Russin v Picciano & Son (supra),* by contrast, the Court of Appeals affirmed a finding of no liability on the part of the prime contractors under Labor Law § 240 where there had been no contractual delegation of duties or authority. The general contractor "was responsible for the co-ordination and execution of all the work under all the contracts" and the prime contractors "had no contractual arrangement with the

general contractor and were, therefore, not in a position to control any of the activity which generated the injury" *(supra,* 54 NY2d, at 316).

It is the ability to control or supervise the work giving rise to the duties imposed under Labor Law § 240 which renders a third party, who is neither an owner nor a general contractor, liable as their statutory "agent" for any violation of section 240. "Only upon obtaining the authority to supervise and control does the third party fall within the class of those having nondelegable liability as an 'agent' under sections 240 and 241" *(supra,* 54 NY2d, at 318; *see, Waters v Patent Scaffold Co.,* 75 AD2d 744, 745 [1st Dept 1980], *appeal dismissed* 53 NY2d 704).

In this case, there was no contractual delegation of duties by the contractor, Garcia, to Warshow which would have given Warshow authority to inspect or supervise Garcia's work. There was merely a gratuitous loan of Warshow's rigging license. While it is true that this gratuitous act enabled Garcia to get the job, it did not make Warshow a statutory "agent".

Although we agree that the court properly dismissed the claims predicated on Labor Law § 240, we find that the court committed reversible error in refusing to charge the jury on the issue of foreseeability of an intervening cause as requested by appellants. Appellants established a prima facie case of respondents' negligence by showing that Warshow violated a local law which carries a penal sanction. While a violation of a statute promulgated by the State Legislature constitutes negligence as a matter of law, the rules of an administrative body "or even the ordinances of a municipality" lack the force and effect of a substantive legislative enactment and, therefore, violations thereof are merely evidence of negligence. *(Long v Forest-Fehlhaber,* 55 NY2d 154, 160 [1982]; *Conte v Large Scale Dev. Corp.,* 10 NY2d 20, 29 [1961]); *Major v Waverly & Ogden,* 7 NY2d 332, 336 [1960].) The jury in this case found that respondents were negligent but did not consider this negligence a proximate cause of the accident. This issue was, therefore, of critical significance to appellants' case. That the jurors had trouble with this issue is apparent from their request, during deliberations, to rehear the definition of proximate cause. The court's failure to charge the jury as requested by appellants was a fundamental error which prevented the jury from fairly considering the issue presented.

*(Avram v Haddad,* 88 AD2d 942 [2d Dept 1982]; *DiGrazia v Castronova,* 48 AD2d 249, 252 [4th Dept 1975].)*

Although the jurors were given an adequate definition of proximate cause and were told that there may be more than one proximate cause of an accident, the court should have also instructed the jurors that, under New York law, the intervening act of a third person between the defendants' conduct and the plaintiffs' injury does not automatically sever the causal connection. "In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence" *(Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315 [1980]; *Kush v City of Buffalo,* 59 NY2d 26, 32-34 [1983]). Appellants requested that the court instruct the jury that if they found respondents had been negligent but that appellants' injuries were caused by a third person (Garcia), respondents would nevertheless be liable if a reasonably prudent person would "have foreseen an act of the kind committed by the third person as a probable consequence" of respondents' negligence. This requested charge, taken from PJI 2:72, was appropriate and necessary in view of the evidence.

It cannot be said in this case that the intervening act, the negligent rigging of the scaffold by an unlicensed rigger, was an extraordinary or unforeseeable consequence of Warshow's decision to lend his license to Garcia. *(Cf., Ventricelli v Kinney Sys. Rent A Car,* 45 NY2d 950 [1978]; *Santiago v New York City Hous. Auth.,* 63 NY2d 761 [1984].) The requirement that persons engaged in this line of work be licensed and the prohibition against license holders permitting their licenses to be used by others are clearly intended to protect the safety of workers and the public-at-large. The prevention of such negligence, death and injury as this case tragically presents, is precisely the protection sought to be afforded the public by the experience and testing requirements prescribed for the issuance of the license. The licensee who "lends" his license to another holds him out to those seeking to employ a rigger, and those public officials charged with enforcing this law, as qualified. There would appear little doubt that the holding out of an unqualified, unlicensed person as a licensed rigger, a trade with inherent dangers to its workers and those who pass the site of the work, may result in death or injury. However, in each case the issue of proximate or legal cause is one to be decided by the trier of fact *(Derdiarian v Felix Contr. Corp., supra; Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, 520-521

[1980]; *Muhaymin v Negron,* 86 AD2d 836, 837 [1st Dept 1982]).

Accordingly, the judgment of the Supreme Court, New York County (Harold Baer, J.), entered June 15, 1988, after a jury trial, should be reversed, on the law and the facts, and the matter remanded for a new trial, with costs.

MURPHY, P. J., KASSAL, ELLERIN and RUBIN, JJ., concur.

Judgment, Supreme Court, New York County, entered on June 15, 1988, unanimously reversed, on the law and the facts, and the matter remanded for a new trial. Appellants shall recover of respondents one bill of $250 costs and disbursements of this appeal.