■ Theresa Mullery, as Executrix of Michael Mullery, Deceased, Respondent, v Ro-Mill Construction Corp. et al., Appellants.—Judgment, Supreme Court, Bronx County, entered December 6, 1978 in favor of plaintiff executrix in a wrongful death action, reversed, on the law, without costs, and the complaint dismissed. Appeal from order entered May 9, 1979, denying a posttrial motion to set the verdict aside on varied grounds, dismissed as academic. Defendants appeal from a judgment in favor of the plaintiff executrix after a jury trial. The deceased, a member of a private health club owned and operated by the defendants, sustained fatal injuries on February 17, 1975, in the swimming pool maintained by the club. After swimming in the pool for a period of time, the deceased left the pool, suddenly mounted a tower alongside it on which the lifeguard's chair was located and dived into a shallow portion of the pool, fracturing his cervical spine. The theory of liability advanced at the trial was that the deceased was intoxicated, that employees of the defendants knew or should have known of his condition, and that the defendants were negligent in not excluding the deceased from the area of the swimming pool. We agree that there was sufficient evidence of intoxication to raise a factual issue as to the negligence of the defendants. On the other hand, it seems quite clear that the deceased's own actions were negligent as a matter of law. In the absence of circumstances that would permit the application here of the last clear chance doctrine (see Ann. Last Clear Chance-Intoxicated Person, 26 ALR2d 308, § 12, pp 345-346) the liability of the defendants may be sustained only on the theory, in effect presented to the jury in the court's charge, that the

defendants had violated a special duty of care to the deceased as an intoxicated person. The concept of a special duty was developed with regard to the obligations of common carriers to intoxicated passengers. (See, e.g., *Fagan v Atlantic Coast Line R. R. Co.,* 220 NY 301; *Fardette v New York & Stamford Ry. Co.,* 190 App Div 543.) Its essential principles were succinctly set forth in *Fardette v New York & Stamford Ry. Co.* (p 546), as follows: "In cases where there is no special duty resting upon the defendant to protect the plaintiff from the results of his own intoxication, the fact that the plaintiff was intoxicated, if it was a contributing cause of the injury, is a bar to the action. [Citations omitted.] But this rule is modified in cases where a defendant, like a common carrier, owes to a passenger plaintiff a special duty to protect him because of the fact that he is intoxicated. [Citation omitted.] In such cases intoxication is considered a condition only under which the problem must be solved, and a remote, not proximate, cause of the injury, although it may have been present and may have affected the conduct of the plaintiff at the time of the accident. Obviously, if the defendant was under an obligation to protect the decedent against the results of his intoxication, and the accident happened partly through the failure of the defendant to furnish such protection, the very condition against which the defendant was to protect the decedent cannot bar the right of action arising from the failure of the duty to protect him." We are aware of no case in which the special duty principle has been applied to a defendant other than a common carrier. (Cf. *Moyer v Lo Jim Cafe,* 19 AD2d 523, affd 14 NY2d 792.) In *Olsen v Realty Hotel Corp* (210 F2d 785), the only case cited by plaintiff as embodying such an application, it is immediately apparent from an examination of the opinion that the court did not undertake to consider the issue presented here. We do not exclude the possibility that there may be circumstances under which an extension of the special duty concept would merit consideration, although the force of the argument for such an extension has been significantly weakened by the enactment into the law of this State of the doctrine of comparative negligence (CPLR art 14-a), a doctrine regrettably not applicable to this pre-September, 1975 death. In any event, the evidence here does not disclose such circumstances. For while there is evidence that the deceased was to some extent intoxicated, the totality of the evidence discloses no basis for the conclusion that the defendants knew or should have known that the deceased was so intoxicated that he was unable to take care of himself and that his judgment was so impaired that he was likely to undertake such a dangerous action. Accordingly, the judgment in favor of the plaintiff is reversed and the complaint dismissed. Concur—Sandler, J. P., Sullivan, Ross and Carro, JJ.

Markewich, J., dissents in a memorandum as follows: Though I confess some doubt as to the amount of the verdict, I would affirm as to liability, the central issue on this appeal. There is no quarrel here with the memorandum opinion of the court in so far as it describes plaintiff-respondent's theory of liability; indeed, that description relieves this dissenter of part of his burden. Further, the concession "that there was sufficient evidence of intoxication to raise a factual issue as to the negligence of the defendants" saves much argument, for implicit in the jury's verdict is a finding of fact in plaintiff's favor on this issue. The difficulty I find with the majority writing is that it then goes on to talk of subjects not really apropos as presented: of a special duty owed by common carriers to intoxicated passengers—obviously an area beclouded by considerations of contract of safe carriage—and, without specification, the application of the doctrine of last clear chance,

and then concludes by second guessing the jury in respect of its finding "that the defendants knew or should have known that the deceased was so intoxicated that he was unable to take care of himself and that his judgment was so impaired that he was likely to undertake such a dangerous action." Let us take last things first. At argument, we were told that the deceased could not have been far under the influence because, before he climbed to the vacant lifeguard's seat, he had vigorously engaged in swimming back and forth. Such an exercise requires no operation of judgment; indeed, drunks are notorously able to display great physical prowess, usually expressed in fighting. The deceased's judgment was impaired, else he would not have climbed the stand and essayed a directly downward dive in water too shallow to perform such a maneuver safely. In this respect, he possessed no more than the judgment of a small child, and there can be no doubt that, had a tiny infant wandered into the potentially dangerous, slick, wet area of a swimming pool, he would have been taken by the hand and gently led away. Perhaps there are no cases to cite on removing intoxicated persons from a swimming pool area because, by ordinary standards, no lifeguard worthy of the descriptive title, or pool attendant worthy of his pay, would even consider permitting a drunk to remain in such a dangerous place. The duty of avoiding disaster by last clear chance reaction did not arise when "the deceased left the pool, suddenly mounted a tower * * * and dived". That was too late. The duty to react by removing the deceased, intoxicated, as the witnesses who testified knew and as the attendant should have known, arose when he arrived at this potentially dangerous swimming pool, where no one with impaired judgment should have been permitted to come.* Of course, this bizarre particular danger was not to be specifically foreseen, but one who operates a potentially dangerous place for profit should have a duty to foresee that one whose judgment is impaired should not be permitted to enter. To return to basics: "It is familiar doctrine that a man placed in a responsible situation must guard against a risk of danger to others where reasonable foresight would suggest a good chance of occurrence and reasonable care suggests steps in avoidance. As the doctrine of tort developed, predictability of casualty became the main element; and this in turn, as always in the case of social predictability, rested on the experience of society. The judgment required to be applied, as well as the risk of liability to be assumed, was based on what a man would regard as likely to happen, and this could be predicted only on what he knew, or should have learned, had happened in the past. The rule of tort liability was never regarded as an insurance against all casualty; it was a selective process of protection against the injury to the innocent which common sense dictated should be guarded against." (McPartland v State of New York, 277 App Div 103, 106.) "Ordinary care must be in proportion to the danger to be avoided and the consequences that might reasonably be anticipated from the neglect. It must be commensurate with known dangers. The risk reasonably to be perceived defines the duty to be obeyed. A man placed in a responsible situation must guard against a risk of danger to others where a reasonable foresight would suggest a good chance of occurrence and reasonable care suggests steps in avoidance." (41 NY Jur, Negligence, § 18.) There has been

---

* Anomalously, had the lifeguard been in his tower chair, his very pre-emption of the perch might have prevented the occurrence even though the deceased would not have been close enough on his arrival to have been well observed as to sobriety. However, the guard was elsewhere, checking in patrons at the pool's entrance, where the deceased would easily have been subject to closer observation.

some mention of contributory negligence. Displayed how? By getting drunk? Such a dictum has no place in this discussion of last clear chance to avoid the consequences of negligence, except as discussed above. By climbing and diving? To risk repetition, that was the result only of not having seized upon the early clear chance of eliminating all danger by immediate expulsion. The verdict as to liability should stand, and denial of the motion to set it aside should be affirmed.