OPINION OF THE COURT
Alfred D. Lerner, J.
This is an action to recover damages for personal injuries sustained by plaintiff, Marilyn Gallin, arising out of an accident which occurred on defendant’s LI Oil jet airplane at Fort Lauderdale, Florida. Plaintiff Charles Gallin, her husband, sues for lost services. The parties have agreed that New York law shall apply.
In the early part of 1972, plaintiff, Charles Gallin, telephoned defendant, Delta Airlines, Inc., and ordered two tickets on Delta’s Flight 1183 to Fort Lauderdale, Florida. Inasmuch as his wife, plaintiff Marilyn Gallin, used a single crutch known as a Canadian or elbow crutch, he asked for bulkhead seats, Nos. Al and A2. These two seats, both of which are in the first class compartment, are somewhat roomier than the others and, therefore, more comfortable for Mrs. Gallin. The two seats were not allocated at that time, but were later assigned when plaintiffs arrived at JFK International Airport folr seat selection prior to departure.
*478 The plaintiffs entered the aircraft at the Delta terminal without incident. They made their way to their seats and plaintiff gave her crutch to one of the flight attendants. Plaintiff needed no assistance to enter the aircraft either from flight personnel or from her husband.
The testimony discloses that plaintiffs were experienced travelers who made at least five trips a year to Fort Lauder-dale on the defendant’s aircraft. Plaintiffs’ testimony fails to disclose any evidence that defendant’s employees were placed on notice that Mrs. Gallin suffered from a condition of so disabling a nature that defendant should have foreseen the accident which later ensued. As a matter of fact, plaintiff testified that although she used an elbow crutch, her apparent actual disability was little more than a “slight limp”.
The plaintiffs remained in their seats throughout the flight and, as experienced travelers, they awaited the departure of what they believed to be all of the other passengers before attempting, themselves, to deplane at Fort Lauderdale.
At a time which they deemed appropriate, the plaintiffs left their seats and proceeded toward the door. Mrs. Gallin had already received her crutch from a flight attendant. She neither requested nor was she offered assistance by defendant’s employees. When asked upon direct examination, if there was any reason for her not requesting aid she replied: “Well Pm a little self conscious of the limp that I have, and the condition. Very often I’m offered assistance, I would take it, but if I wasn’t offered any I thought I could manage myself.”
The testimony further disclosed that Mrs. Gallin, not only sought no aid from defendant’s employees but, other than to take his arm, accepted no assistance from her husband. As a matter of fact plaintiff, Charles Gallin, left the aircraft first, did not assist his wife, saw no reason to do so, and only heard her fall some few seconds after he deplaned.
Plaintiff, Marilyn Gallin, testified that after her husband left the aircraft, she felt a “terrific bump behind my right leg”. She then fell to the floor. She does not know who *479 or what struck her, but did notice someone behind her carrying “a piece of carry-on baggage”. Whether that person struck her, is anyone’s guess, because plaintiff simply does not know.
After she fell, plaintiff again refused assistance, she “leaned on the bulkhead”, and in response to a query testified that “I pulled myself over. I picked myself up.” In all, plaintiffs’ testimony reveals that Marilyn Gallin was a self-sufficient, minimally handicapped person at the time of this mishap; that she was viewed as such by her husband, who accompanied her on the flight; that both Mr. and Mrs. Gallin were experienced air travelers; that neither Mr. nor Mrs. Gallin had reason to notify nor did they notify defendant that plaintiff, Marilyn Gallin, suffered such disability from which defendant should reasonably have forseen a need to provide some additional degree of care or attention; that plaintiffs exercised a conscious choice in proceeding to exit the aircraft at a time they believed appropriate and in a manner clearly indicating that Mrs. Gallin was not such a person who could reasonably be viewed as being disabled. The testimony discloses that Mr. Gallin exited the aircraft first followed by Mrs. Gallin. He gave her no assistance at all nor did she request any help. The plaintiffs have also clearly failed to show the existence of a “crowded and unruly” condition at the aircraft’s exit as they allege in their first cause of action.
In furtherance of its second cause of action, plaintiffs allege that defendants, Delta Airlines, Inc., knew or should have known that plaintiff, Marilyn Gallin, had a physical disability and by reason therefore, a special duty to assist her existed. Plaintiffs contend that by failing to offer assistance, defendant breached this “special duty” it owed the plaintiff.
It would seem that plaintiffs seek to impose upon defendant some omniscient sense of what reasonable employees should have foreseen under the facts testified to herein. Without repeating all of the above, the plaintiffs’ testimony clearly describes an occurrence which was not foreseeable. The specific nature of the accident, exactly how it happened, remains a matter of conjecture up to this moment.
*480 What is clear, however, is that no evidence has been disclosed which would place defendant on notice that plaintiff had a physical disability requiring it, in the exercise of reasonable discretion to provide an added degree of care, tantamount to the imposition upon it, of this “special duty”.
The use of a single elbow crutch by one passenger on a common carrier who discloses little more than a slight limp, who is accompanied by her husband, neither of whom request assistance from flight personnel, cannot give rise to creation of this special obligation. The plaintiffs’ weak position is further exacerbated by the fact that plaintiff, Marilyn Gallin’s husband, a coplaintiff in the derivative cause of action obviously saw no reason to render assistance himself. Can defendant be expected to have a greater insight into Mrs. Gallin’s condition than he had?
The New York courts have outlined the duties of a common carrier in a line of cases perhaps still highlighted the best by Palsgraf v Long Is. R.R. Co. (248 NY 339, 344) in which Judge Cardozo stated: “The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension!’.
In that oft-cited case of Palsgraf, Chief Judge Cardozo investigates the concept of negligence as it develops at common law and concludes that it is essentially a question of foreseeability. In other words, negligence consists in that relationship between the facts and circumstances as perceived by a reasonably prudent person and the duties of conduct imposed on that person by reason of those perceptions (Palsgraf v Long Is. R.R. Co., supra). At about that time and subsequently, appellate courts have expressed different opinions as to the duty of care owed by a common carrier to its passengers. Generally, such expressions as “high” or “very high” duties of care have resulted in conclusions that the burden rests with the carrier to explain the manner in which the accident occurred (Plumb v Richmond Light & R. R. Co., 233 NY 285; Kazales v Minto Leasing, 61 AD2d 1039). Despite these different expressions of duty, it appears that the fundamental question of foreseeability is at the heart of all of them (see McLean v Triboro *481 Coach Corp., 302 NY 49). Thus the Pattern Jury Instruction charge on duty of care speaks of that responsibility which a reasonably prudent carrier would exercise under the circumstances (PJI, § 2:161).
The artificial distinctions of varying duties owing from a landowner to trespassers, invitees or business invitees was abandoned by the Court of Appeals in Basso v Miller (40 NY2d 233). In that case the court adopted a “single standard of care” under which an owner of land is required to respond reasonably to those on his land based on the facts and circumstances as they might be perceived by him. The court then has returned to the common-law development of negligence by defining duty of care in terms of foreseeability (supra, pp 240-241). To the extent that any different duty of care may have been expressed with regard to a common carrier, it would appear that that different expression would no longer pertain. Thus, if it were not clear from McLean (supra) it would appear clear from Basso that the duty of care owed by a carrier to its passengers is based on foreseeability and no more (see Grant v Metropolitan Tr. Auth., 67 AD2d 611).
Cases expressing a set duty of care owed to a plaintiff under disability do not require a different result. The duty of care is still one of foreseeability which now must be considered in light of the plaintiff’s disability and the nature and extent of the defendant’s knowledge thereof (see Grant v Metropolitan Tr. Auth., supra; cf. Mullery v Ro-Mill Constr. Corp., 76 AD2d 802).
No special duty having arisen herein, and plaintiffs having failed to produce any evidence to suggest that defendant breached its duty of ordinary care, this court is left with no alternative other than to grant defendant’s motion for dismissal, upon which it reserved decision at the conclusion of plaintiffs’ case and to set aside the jury’s finding of 55% negligence on the part of the defendant.