Keating, J.
 

 These two wrongful death actions, heard together, arise from an automobile accident on Route 106 in Oyster Bay in which plaintiffs’ respective intestates were killed. At about 9:30 p.m. on January 19, 1960, Frederick J. Herholdt (18 years old) was driving a 1949 automobile in a southerly direction and was accompanied by Susan Marmorale (16 years old). While negotiating a curve to the left, the auto left the road and collided with a ultility pole located off the right side (westerly side) of the road and both occupants were killed. There were no known witnesses to the accident.
 

 Approaching the scene of the accident in a southerly direction one would come upon several commercial sites on the west side
 
 *317
 
 of the road immediately preceding the utility pole. First is that of Lizza Asphalt Construction Co., Inc., originally a defendant but found not negligent at trial and not involved in this appeal. Next is the site of defendants Fehr Sand & Gravel, Inc., and Approved Sand & Gravel Corp. (hereinafter referred to as Fehr). South of the Fehr property but before the pole was located a garage belonging to a fuel oil company. Proceeding south, the road is flat until about in front of Fehr’s where it grades upward. Also, in front of the Fehr and Lizza premises the road pitches from west to east and there are catch basins on the east side but no drainage system on the west side of the road.
 

 In connection with its operations Fehr maintained three sumps of wash water connected to each other by pipes. Sometime on the night of Friday, January 15, 1960, a broken pipe caused water from the sumps to overflow onto Lizza’s property and then onto the surface of the road. Defendant’s operations chief was notified by Lizza and on Sunday, January 17, according to his testimony, with the use of a loading machine he created a dyke and stopped the water from flowing.
 

 The evidence showed that, at the time of the accident on January 19, the weather was fair and the travelled portion of the road was dry except for some ice and slush in front of the Fehr and Lizza premises. The southerly edge of the ice patch, as measured shortly after the accident, was about 120 feet from the pole. However, vehicles passing through the water spread it out on the road and tracked it closer to the pole so that there were additional ice spots between the main ice patch and the pole. The temperature, which was above freezing during the day, had fallen to 32 degrees at 8:00 p.m. and 31 degrees at the time of the accident. On the previous evening .34 inches of rain had fallen, and snow, some of which had melted on the day of the accident, was piled along the edges of the road.
 

 Plaintiffs contended that defendants had negligently caused water to flow across the roadway, that the water had turned to ice, and that the ice had caused the auto to skid out of control into the utility pole thus causing the deaths of plaintiffs’ intestates. Plaintiff Marmorale also contended that the auto was negligently operated and, therefore, sought recovery from Henry Wragge who owned the car and was the stepfather of the deceased driver. Defendants argued that plaintiffs had
 
 *318
 
 failed to show that the defendants had been negligent, that the ice was the result of their actions, or that there was any causal connection between the existence of the ice and the happening of the accident.
 

 The jury returned verdicts in favor of plaintiffs Wragge and Marmorale against Fehr and in favor of defendant Wragge.
 

 In reversing the judgments for the plaintiffs against Fehr, the court below agreed that there was evidence from which a jury could find that defendants’ negligence caused the sump to overflow but concluded that plaintiffs’ proof had failed on two points: it was neither a fair nor logical inference that the ice was caused by the overflow from the sump, nor was there evidence that the accident was caused by the ice. We disagree with these conclusions and hold that there was sufficient proof to warrant the jury’s finding to the contrary.
 

 Viewing the evidence in a light most favorable to plaintiffs, it appears that the court below erred when it concluded that the sump apparently had stopped flowing on Sunday, January 17, and that the ice was equally attributable to melting snow and the previous day’s rain.
 

 On the question of when the sump ceased to flow, defendant’s operations chief, who had made the dyke to stop the flow on Sunday, testified that the water ceased flowing 15 to 20 minutes thereafter, that he was on the premises Monday morning and there was no water flowing from the sump nor from the Fehr or Lizza premises to the road, and similarly on Tuesday there was no leak from the sump and no water flowing along the Fehr or Lizza premises. Defendant’s foreman also testified that on Monday and Tuesday there was no water flowing into the roadway from the Fehr or Lizza premises nor was there any further leakage from the sump. He also admitted, however, that water remained in the sumps after the leaks were allegedly stopped.
 

 On plaintiffs’ side, however, the owner of a business in Bast Norwich testified that he made six separate trips during the day of the accident between his business and his home in Oyster Bay and, each time he passed the scene of the accident, he observed the following: “ As I went through in the morning, 1 noticed quite a bit of water coming across this road in a certain area in front of one of these businesses and this water was actually running, the water wasn’t just draining very slow or
 
 *319
 
 slightly, it was actually running to the extent when you drove through it with your car it actually made a lot of noise under the car, and you could hear the water hit the floor boards.”
 

 The witness identified the business as Fehr and testified further that in the early evening the water was becoming slush and by the time of his last trip (8:45 p.m.) it was ice. He also stated that on Monday, the day before the accident, the water was similarly running across the road in front of the Fehr property.
 

 An employee at the garage next to Fehr’s testified that on the evening of the accident, when he went to work, he saw water running across the road in front of Fehr’s.
 

 The above testimony by plaintiffs’ witnesses was sufficient to support a finding by the jury that water continued to flow from Fehr’s property onto the roadway after Sunday, January 17. In stating that the water apparently had stopped flowing on Sunday, the court below must have been choosing to believe the testimony of defendants’ witnesses rather than plaintiffs’. This question, however, was properly left to the jury by the trial court.
 

 Moreover, since the road was dry except for the ice spot which, according to the policemen first at the scene, started from the puddle of slush in front of Lizza’s, the jury could reasonably conclude that the ice was caused by the flowing water from Fehr’s rather than by melting snow or the previous day’s rain. The court below thus erred in ruling plaintiffs’ proof insufficient on the question of what caused the ice. From the testimony of the witnesses the jury could have reasonably inferred that the ice, was caused by defendants’ negligence. Though the evidence was conflicting, its resolution was within the province of the jury, not the court below. “ Only a jury is constitutionally endowed with the right to pass on conflicting evidence, as well as the credibility of witnesses.”
 
 (Swensson
 
 v.
 
 New York, Albany Desp. Co.,
 
 309 N. Y. 497, 505.)
 

 On the question of whether the ice caused the accident plaintiffs offered circumstantial evidence. The road was dry and safe except for the ice and slush which extended from in front of the Fehr and Lizza premises to near the utility pole. More important was the testimony of the garage employee that on his way to work on the evening of the accident he was proceeding in
 
 *320
 
 the same direction as were plaintiffs’ intestates. The road was in perfect condition, he testified, until he hit a patch of ice in front of Fehr’s. At that point, as he was about to turn into the garage, his car skidded and he very nearly collided with the same utility pole, missing it by about two feet. He also testified that he was at work when he heard the sound of the accident, that he was the first upon the scene, and that he observed skid marks from the auto at the pole extending back to the road about 35 feet. Finally, the witness who made the six trips by the scene of the accident during the day testified that on his last trip (northward) he slowed down, having seen the slush on his prior trip, but when he got onto the ice patch his car began to slide.
 

 The accident being unwitnessed, the proof, of necessity, must rely upon circumstantial evidence. In a case such as this the law recognizes that plaintiff will have to establish fault by a showing of various circumstances from which a jury can draw fair and reasonable conclusions. Moreover, in a death case plaintiff is not held to as high a degree of proof of the cause of action as where an injured plaintiff can himself describe the occurrence.
 
 (Cole
 
 v.
 
 Swagler,
 
 308 N. Y. 325;
 
 Noseworthy
 
 v.
 
 City of New York,
 
 298 N. Y. 76.) Plaintiffs’ evidence is deemed sufficient to make out a prima facie case if it shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred.
 
 (Dillon
 
 v.
 
 Rockaway Beach Hosp.,
 
 284 N. Y. 176;
 
 Ingersoll
 
 v.
 
 Liberty Bank of Buffalo,
 
 278 N. Y. 1.)
 

 Though the accident was unwitnessed and both occupants were killed, plaintiffs produced the testimony of two other people which strongly suggested the causal relationship between the ice patch in front of Fehr’s and the collision with the utility pole beyond it. Indeed, the garage employee very nearly suffered an accident similar to that of the plaintiffs’ intestates. His experience clearly showed that the ice patch was a hazard. Adding to this the facts that the road was otherwise clear, that the night was clear and that there was testimony of skid marks extending backward 35 feet from the pole toward the ice patch, we find it to be a very reasonable inference that the decedents’ automobile was traveling safely along the road until it struck
 
 *321
 
 the ice and that it thereupon skidded out of control, colliding with the utility pole.
 

 The circumstantial evidence offered by plaintiffs need not exclude all other possible causes of the accident.
 
 (Dillon
 
 and
 
 Ingersoll,
 
 both
 
 supra.)
 
 On the evidence produced, viewing it in a light favorable to plaintiffs, it was more reasonable that the accident was caused by the ice — that the decedents suffered an experience similar to that of the garage employee earlier in the evening but with greater consequence — than that the accident was caused by an oncoming or passing car or some other happening which may have caused the driver to lose control of the automobile. The task of weighing and evaluating the evidence belonged to the jury and the court below erred in overruling the verdict of the jury. Plaintiffs made out a sufficient prima facie case and were entitled to a submission of the case to the jury.
 

 Only a word need be said with regard to the appeal from the affirmance of the jury verdict in favor of the owner of the auto against plaintiff Marmorale. Shortly after the accident the auto was inspected at the request of the police department with the findings being that the brakes and steering equipment were in good condition and no parts were excessively worn. The auto was also equipped with snow tires. There was virtually no evidence of negligence on the part of the driver except for the argument that the auto must have been traveling very fast. This was not supported by any proof and the speed limit was 50 miles per hour. The question, however, was submitted to the jury and a verdict was returned in favor of the owner Wragge. This finding was affirmed in the court below and there is no reason for disturbing it.
 

 The order of the Appellate Division should be reversed insofar as it reversed the judgments in favor of the plaintiff in each action against the defendants Fehr and a new trial granted, with costs to abide the event; the order in all other respects should be affirmed, with costs, in favor of defendant Wragge against plaintiff Marmorale.
 

 Chief Judge Desmond and Judges Fuld, Burke and Bebgan concur with Judge Keating ; Judges Van Voorhis and Scileppi dissent in part and vote to affirm.
 

 Ordered accordingly.