■ GERALDINE ZIKELY, an Infant, et al., Appellants, v MAGDALENA ZIKELY, Respondent. — In a negligence action, *inter alia,* to recover damages for personal injuries, plaintiffs appeal from an order of the Supreme Court, Westchester County (Gurahian, J.), dated September 29, 1981, which granted defendant's motion for summary judgment pursuant to CPLR 3212 and dismissed the complaint. Order affirmed, without costs or disbursements. The infant plaintiff was injured when the defendant parent turned on a hot water faucet in a tub to prepare a bath and then left the room. The child, left unsupervised, wandered into the bathroom and fell into or otherwise entered the tub, suffering severe burns. The complaint was properly dismissed. The proximate cause of the injury was the negligent supervision of the infant (*Nolechek v Gesuale,* 46 NY2d 332; *Holodook v Spencer,* 36 NY2d 35). The

dissenter's position is untenable. The dissent seeks to take this case out of the general *Holodook* principle of nonliability for negligent supervision by a parent of a child by arguing that in this case the dangerous condition was created by the parent. In *Nolechek v Gesuale (supra)*, however, it was determined that a child did not have a cause of action against his parent when the parent gave an unregistered, uninspected motorcycle to his child, who not only lacked any type of operator's license, but who was also blind in one eye and had impaired vision in the other eye. Although the parent created a dangerous condition by his actions, and the child was then injured as a direct result of those actions (i.e., a motorcycle accident), the Court of Appeals held that the child had no cause of action against the parent. This same rule of law governs the instant situation. The dissenter's reading of *Holodook (supra)*, would also severely undermine the considered determination of the Court of Appeals that no cause of action for negligent parental supervision exists in this State. The dissent thus states that the three factual situations presented in *Holodook* derive from situations in which an unsupervised infant was injured by something which was outside the control of the parent. The Court of Appeals, however, stated (36 NY2d 35, 45, *supra*): "We can conceive of few, if any, accidental injuries to children which could not have been prevented, or substantially mitigated, by keener parental guidance, broader foresight, closer protection and better example. Indeed, a child could probably avoid most physical harm were he under his parents' constant surveillance and instruction, though detriment more subtle and perhaps more harmful than physical injury might result." Furthermore, to at least some degree the parents in *Holodook* took some affirmative action in creating a danger. Bringing a young child to a neighbor and letting the child loose in a yard where an eight year old is playing with a power mower or bringing a child to a playground containing an 11-foot-high slide involves some affirmative behavior on the part of the parent in creating a danger that the child, if left unsupervised, will suffer injury. If the courts choose to carve out the exception to *Holodook* suggested by the dissent, it becomes too easy to avoid the *Holodook* holding by characterizing some act by a parent as an affirmative step in creating the danger for the child. Every time a parent plugged in an iron, started a toaster, or boiled a pot of water on the stove, he would be subjected to potential liability if an unsupervised child came in contact with these common, daily household hazards in a manner which resulted in injury. To accept such a position would be to strip *Holodook (supra)* of a significant part of its meaning. The dissent takes the position that *Holodook (supra)* derives from a concern that the courts not second guess decisions involving parental discretion, and that this concern is not involved herein. *Holodook,* however, expresses a concern not only with a desire to keep the judiciary from excessively interjecting itself into the family relationship, but also with potential fraud problems, *Dole* apportionment problems (see *Dole v Dow Chem. Co.,* 30 NY2d 143), a desire to preserve family resources for all family members, and a desire to avoid getting the courts involved in the burdensome and difficult task of drawing lines as to the proper level of supervision a parent must exercise over his child in each individual case. Although not each of these concerns will be involved in every negligent supervision case, the question of the proper level of supervision required for a child while a bath is being prepared for the child implicates these considerations to a sufficient degree to require a conclusion that the facts herein constituted only negligent supervision. Accordingly, the complaint was properly dismissed. Damiani, J. P., Thompson and Boyers, JJ., concur.

Gibbons, J., dissents and votes to reverse the order appealed from, and deny the defendant's motion for summary judgment, with the following memorandum. According to defendant's examination before trial, on October 31, 1975,

she left her two daughters, ages one and two, in the master bedroom of the family home while she began to prepare their bath. She went into the bathroom, which was next door to the bedroom, and turned on only the hot water, leaving the drain open. Defendant did not recall if she closed the bathroom door before going to a hall closet to get a towel for the children. In any event, after getting a towel, she proceeded to the children's bedroom where she remained for some three minutes. The older girl came to the door of the bedroom and said, "Mommy, water" and "Gida", the latter being a nickname for the younger child. Defendant ran to the bathroom and saw her younger daughter, lying in the bathtub with the hot water running down her arm. The infant sustained burns over 25 to 35% of her body, was hospitalized for 22 days, underwent emergency surgery and is permanently scarred. Thereafter, the child, by her father, brought this action against her mother. The majority disposes of this case as one of negligent parental supervision, which is not actionable in this State (see *Holodook v Spencer*, 36 NY2d 35). Parental immunity from liability in cases of negligent supervision is an exception to the abrogation of intra-family immunity for nonwillful torts established in *Gelbman v Gelbman* (23 NY2d 434). This exception is confined to injuries resulting solely from negligent supervision and is not extended to situations in which the parent breached a duty owed apart from the familial relation (*Holodook v Spencer, supra,* pp 50-51; *Lynch v Lynch,* 88 AD2d 972; *Hurst v Titus,* 77 AD2d 157; *Goedkoop v Ward Pavement Corp.,* 51 AD2d 542). Assuming the truth of defendant's description of the incident, the injury in the instant case may not have been solely caused by negligent supervision. The injurious instrumentality was the running hot water which was turned on and controlled by the parent. This case is analogous to *Hurst v Titus (supra),* in which the infant was injured in a fire negligently caused by her mother. Applying *Holodook (supra),* the Fourth Department reasoned that the mother could not be held liable if the injuries were caused solely by her failure to rescue the child before calling the fire department, since that omission constituted negligent supervision. However, she could be liable for injuries proximately caused by her negligence in causing the fire in the first instance. The court concluded that whether or not the latter act of negligence was the proximate cause of the injuries was for a jury to decide as a question of fact. In contrast, *Holodook* and its companion cases (*Graney v Graney* and *Ryan v Fahey,* 36 NY2d 35), all involved situations in which an unsupervised infant was injured by something which was outside the control of the parent. There were no allegations in those cases that the parent had negligently set into motion an instrument which then caused injury. *Holodook (supra),* derives from a concern that the courts not second guess decisions involving parental discretion in the raising of children (*Holodook v Spencer, supra,* p 50). The facts in this case do not directly involve a parental decision about how much freedom or responsibility to give a child. Rather, this case involves an unconsidered lapse which exposes the child to *a dangerous condition created by the parent, independent of and separate from the parent-child relationship.* Holding the parent liable for creating that condition does not impinge on the exercise of parental authority and does not involve familial relationships. My colleagues' reliance on *Nolechek v Gesuale* (46 NY2d 332), is misplaced. In *Nolechek* it was determined, as the majority correctly notes, that a child does not have a cause of action against a parent who entrusts the child with a dangerous instrument, such as a motorcycle. The Court of Appeals remarked that "when a 'dangerous instrument' or a sometimes dangerous instrument may be entrusted to a minor child is a significant discretionary decision in the proper exercise of [the] parental right" to raise the child (*Nolechek v Gesuale, supra,* p 338). *Nolechek (supra),* is a logical application of the *Holodook* rule, since what to entrust to a

child is a major aspect of the parent-child relationship. However, *Holodook* (*supra*) only carved out an exception to *Gelbman v Gelbman* (23 NY2d 434, *supra*). The latter case is the appropriate guide where a parent's alleged negligence does not pertain to the unique activities of parenthood. Thus, a father who stores blasting caps in the basement of the family home may be liable to his son who is thereby injured (*Goedkoop v Ward Pavement Corp.*, 51 AD2d 542, *supra*). Likewise, having a trap door open may lead to parental liability (*Lynch v Lynch*, 88 AD2d 972, *supra*), or, as already described, negligently causing a fire (*Hurst v Titus*, 77 AD2d 157, *supra*). Letting scalding water run into a bathtub for an extended period of time falls into this category of activity (see *Muhaymin v Negron*, 86 AD2d 836). The question of whether the running of scalding water in an accessible bathroom is itself a negligent act for which liability could be found is an issue to be determined at trial (*Muhaymin v Negron, supra;* see *Goedkoop v Ward Pavement Corp., supra*). The allegation that the defendant turned on the hot water and left the bathroom, creating the hazard leading to the infant's injuries, is a cognizable claim, separate and distinct from an allegation of negligent supervision (see *Lynch v Lynch, supra*). A jury could find that this separate act of negligence was a substantial and proximate cause of the injuries (see *Hurst v Titus, supra; Muhaymin v Negron, supra;* see, also, *Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315; *Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 520; *Sheehan v City of New York*, 40 NY2d 496, 503).