Geoffrey SMITH and Linda Smith, Individually, and Geoffrey Smith as Administrator of the Estate of Adam Smith, Plaintiffs,

v.

HUB MANUFACTURING, INC. and Lincoln Manufacturing Company, Inc., Defendants.

HUB MANUFACTURING, INC., Defendant/Third-Party Plaintiff,

v.

Kenneth W. BEIJEN and Margaret Beijen, Third-Party Defendants.

Kenneth W. BEIJEN and Margaret Beijen, Third-Party Defendants/Fourth-Party Plaintiffs,

v.

PACIFIC POOLS OF ALBANY, INC., Fourth-Party Defendant.

No. 83–CV–522.

United States District Court, N.D. New York.

May 22, 1986.

Levene, Gouldin & Thompson, Binghamton, N.Y., John Scarzafava, Oneonta, N.Y., for plaintiffs; John J. Pollock, of counsel.

Law Firm of Thomas O'Connor, Binghamton, N.Y., for defendant Hub Mfg., Inc.; James C. Gacioch, of counsel.

Coughlin & Gerhart, Binghamton, N.Y., for defendant Lincoln Mfg. Co., Inc.; Richard B. Long, of counsel.

Louis S. Petrone, Utica, N.Y., for third-party defendants Kenneth W. and Margaret Beijen.

Hancock & Estabrook, Syracuse, N.Y., for fourth-party defendants Pacific Pools of Albany, Inc.; Walter L. Meagher, Jr., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

### I.  FACTS

On July 4, 1982 Geoffrey and Linda Smith and their four-year-old son Adam were at a party at the home of their friends the Beijins. Adam fell into the Beijins' above-ground swimming pool while alone and was found unconscious in the pool. He never regained consciousness and died almost two years later.

The Smiths seek damages for Adam's injury and death. In their complaint against the manufacturer of the pool, Hub Manufacturing Co., and against the manufacturer of the ladder attached to the pool, Lincoln Manufacturing Co., the Smiths argue that the pool and ladder were defectively designed because they did not adequately protect children. The Smiths also argue that Hub and Lincoln breached a duty to warn against the dangers of the pool and ladder for children. Hub and Lincoln assert in counterclaims that the Smiths are liable for contribution because they failed to prevent Adam from gaining access to the pool. Hub and Lincoln also seek contribution from the Beijins as third-party defendants. The Beijins in turn seek contribution from fourth-party defendant Pacific Pools of Albany, Inc., who sold them the pool and the ladder.

### II.  MOTIONS BEFORE THE COURT

Hub, Lincoln, and Pacific move for summary judgment on the issues of defective design and failure to warn.

Lincoln moves for summary judgment on the ground that the Smiths cannot establish that Adam used the Lincoln ladder to climb up to the pool, rather than another ladder that stood next to the pool.

The Smiths move for dismissal or summary judgment on the counterclaims by Hub and Lincoln.

In the event that summary judgment is denied and a trial is ordered, Hub, Lincoln, and Pacific move for a limitation of the issues of damages to be tried.

### III.  DISCUSSION

#### A.  DEFECTIVE DESIGN

■ The plaintiffs argue that the pool and the ladder were defectively designed because they could have more effectively protected against access by unaccompanied children. Hub and Lincoln counter that the pool and the ladder were designed according to the state of the art of the pool and pool ladder industries.

The standard in a design defect case is whether, "if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner." *Voss v. Black & Decker Manufacturing*, 59 N.Y.2d 102, 108, 450 N.E.2d 204, 208, 463 N.Y.S.2d 398, 402 (1983). The task of "balancing the product's risks against its utility and cost" belongs to the jury. *Id.* "The plaintiff, of course, is under an obligation to present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner." *Id.*

In the present case, the plaintiffs' expert witness has testified that other swimming pools have ladders that are more effective in preventing pool accidents. This is enough evidence to warrant a trial on the facts. Whether Hub and Lincoln could have feasibly employed a safer design is a question for the jury.

### B. DUTY TO WARN

■ A product can be dangerous even if it is not defectively designed. *See Kerr v. Koemm,* 557 F.Supp. 283, 285 (S.D.N.Y. 1983). Under New York law, if the supplier of a product should know that the product is dangerous when put to normal use, the supplier has a duty to warn users of the danger. *Billiar v. Minnesota Mining & Manufacturing Co.,* 623 F.2d 240, 243 (2d Cir.1980). But there is no duty to warn if the plaintiff knows of the danger or if the danger is well known and should be obvious to anyone. *Id.; Jiminez v. Dreis & Krump Manufacturing Co.,* 736 F.2d 51, 55 (2d Cir.1984); *Kerr,* 557 F.Supp. at 287; *Torrogrossa v. Towmotor Co.,* 44 N.Y.2d 709, 711, 376 N.E.2d 920, 921, 405 N.Y.S.2d 448, 449 (1978). In such situations a warning would be superfluous. Moreover, the elements of a tort claim would not be satisfied in such situations because no plaintiff could establish that the failure to warn caused harm. Whether the danger of a product is obvious is a question for the court. *Kerr,* 557 F.Supp. at 287.

■ The danger of swimming pools to small children is obvious and well known. Everyone should know that an accident like the one in this case is liable to happen if a child is left alone near a pool for even a short time. If some pools have ladders that prevent access by small children, such ladders are uncommon enough that parents should assume that a pool is dangerous unless they are told otherwise or find out otherwise by inspection.

In addition, the plaintiffs in this case had personal knowledge of the danger of the pool to their son. First, on their way to the party they told him that he was not allowed near the pool without an adult. They repeated this warning at the party. *See* Deposition of G. Smith, Aug. 16, 1984, pp. 47–48. Second, before the accident, Mr. Smith climbed up to the pool with Adam on the Lincoln ladder, and Mr. and Mrs. Smith saw Adam climbing on the ladder alone. *See id.* at 56, 62–64, 66–67; Deposition of L. Smith, Aug. 16, 1984, p. 128. Because the Smiths knew of this way of climbing to the pool, even if Hub or Lincoln breached a duty to warn of the dangers of their products to small children, such a breach would not make them liable for the accident.

### C. CAUSATION: THE LINCOLN LADDER

■ In addition to the pool ladder manufactured by defendant Lincoln, there was also a household stepladder leading to the pool deck. The plaintiffs have not produced evidence that anyone saw Adam climb from the ground to the deck or enter the water. Lincoln argues that a jury could not reasonably find that the Lincoln ladder caused Adam's death.

In order to be allowed to go to the jury, a plaintiff must present evidence that would enable the jury to rationally find that the defendant's negligence caused the injury.

[L]iability will be denied where the evidence shows that the injury was caused by one of several causes from any one of which it could just as reasonably and probably have resulted. Where the precise cause of an accident is left to conjecture and may be as reasonably attributed to a condition for which no liability attaches as to one for which it does, then the plaintiff is not entitled to recover.

41 N.Y.Jur. 45 (1965) (footnotes omitted). *See also id.* at 99; W. Prosser, Law of Torts 241 (4th ed. 1971); *Wragge v. Lizza Asphalt Construction Co.,* 17 N.Y.2d 313, 319, 217 N.E.2d 666, 671, 270 N.Y.S.2d 616, 621 (1966). Although an accident may have been caused by something other than the defendant's negligence, the plaintiff "need not exclude all other possible causes of the accident" in order to submit the case to the jury. *Id.* 217 N.E.2d at 672, 270 N.Y.S.2d at 622. *See also Archie v. Todd Shipyards Corp.,* 65 A.D.2d 699, 410 N.Y.S.2d 69 (N.Y.App.Div.1978); *Cole v. New York Racing Association,* 24 A.D.2d 993, 266

N.Y.S.2d 267 (N.Y.App.Div.1965), *aff'd,* 17 N.Y.2d 761, 217 N.E.2d 144, 270 N.Y.S.2d 421 (1966).

The plaintiffs' allegation that Adam used the Lincoln ladder is based on the affidavit of their son Chad, who was eight years old at the time of the accident: "I saw my brother step off [the Lincoln] ladder and come down the deck from the direction of that ladder. He picked up a pole and appeared to be putting it in the pool. A few minutes later, he was found in the pool." This Court holds that from these facts the jury could reasonably infer that Adam probably used the Lincoln ladder to climb from the ground to the deck before he fell in the water. Therefore, the plaintiffs have presented enough evidence of causation to submit the issue to the jury.

### D. COUNTERCLAIMS FOR CONTRIBUTION

The plaintiffs move for dismissal or summary judgment on the defendants' counterclaims, which state that the plaintiffs are liable for contribution because they failed to prevent Adam from going to the pool. The plaintiffs cite as authority *Holodook v. Spencer,* 36 N.Y.2d 35, 324 N.E.2d 338, 364 N.Y.S.2d 859 (1974).

The plaintiff in *Holodook* was a boy who ran into the street and was hit by a car. He sued the driver, and the driver sued the boy's father for contribution, asserting that the father was negligent in letting his son run into the street. The New York Court of Appeals dismissed the defendant's third-party complaint against the father. The court reaffirmed its traditional position that a child does not have a cause of action against a parent for negligent supervision. The policies supporting this position are to minimize judicial interference in the family sphere, to prevent family discord, to preserve the family's assets for the benefit of all its members, and, when the parent is insured, to prevent parents and children from bringing collusive lawsuits. *Id.* 324 N.E.2d at 346, 364 N.Y.S.2d at 867.

The Court of Appeals created an exception to the *Holodook* rule in *Nolechek v. Gesuale,* 46 N.Y.2d 332, 385 N.E.2d 1268, 413 N.Y.S.2d 340 (1978). *Nolechek* in-volved a man who had given a motorcycle to his seventeen-year-old son, who had severely impaired vision and did not have a driver's license. The son was killed when he rode into a cable that closed off a road, and the father brought a wrongful death action against the parties responsible for suspending the cable. The defendants counterclaimed for contribution, alleging that the father was negligent in giving a motorcycle to his son.

The court repeated the *Holodook* rule that there is no cause of action for negligent supervision. *Id.* 385 N.E.2d at 1273, 413 N.Y.S.2d at 345. But the court held that "a parent owes a duty to third parties to shield them from an infant child's improvident use of a dangerous instrument." *Id.* 385 N.E.2d at 1272, 413 N.Y.S.2d at 344. When a child is "negligently entrusted" with a "dangerous instrument", there is a foreseeable risk that an accident will occur and that a third party will be liable for the child's injuries. *Id.* 385 N.E.2d at 1273, 413 N.Y.S.2d at 345. Because the court considered negligent entrustment of a dangerous instrument to be a breach of a duty toward potential tortfeasors, the court refused to dismiss the defendants' counterclaim against the father. *Id.* 385 N.E.2d at 1274, 413 N.Y.S.2d at 346.

The holding was based on the court's view of the equities of the case. Because the father was negligent, the court considered it necessary to reduce the defendants' liability to him, notwithstanding the policies enunciated in *Holodook* against allowing lawsuits for negligent supervision.

> The equities in this case are apparent.... A parent who entrusts an infant child with a dangerous instrument creates a danger to all society. It would be repulsive to permit, under the guise of protecting intrafamily relations, such a parent to escape all liability to a "concurrent" tort-feasor who suffers financial harm as a consequence of the child's inappropriate use of the dangerous instrument and resulting injury.

*Id.*

The *Nolechek* theory of negligent entrustment of a dangerous instrument is

difficult to distinguish from the theory of negligent supervision. *Nolechek* set flexible standards of what constitutes a dangerous instrument: "even a pencil" can be dangerous. *Id.* 385 N.E.2d at 1272, 413 N.Y.S.2d at 344. Similarly, "bicycles, lawn mowers, power tools, motorcycles, [and] automobiles ... are, in some contingencies, 'dangerous instruments'", but in other contingencies children might be properly permitted to use them. *Id.* The court's definition of parents' duty, "to protect third parties from foreseeable harm from dangerous instruments", and "to control their children's use of dangerous instruments", *id.*, makes it clear that what is unreasonably dangerous must be determined on the basis of what care is necessary under the circumstances to prevent accidents. *See, e.g., Lofreddo v. Town of Brookhaven*, 87 A.D.2d 623, 448 N.Y.S.2d 245, 246 (N.Y. App.Div.1982) (whether seesaw is dangerous instrument depends on "the age of infant plaintiff, possible physical or mental disability of the infant plaintiff, any prior experience or expertise with respect to the use of the seesaw, and the manner in which the accident occurred"). This determination is similar to the determination of what constitutes negligent supervision. "[D]eciding when to permit a minor to use a 'dangerous instrument' ... is as much an element of parental supervision as is the decision to monitor a child's play activity more or less closely." *Nolechek*, 385 N.E.2d at 1272, 413 N.Y.S.2d at 344.

The decision to recognize the cause of action of entrustment of a dangerous instrument, despite its similarity to the cause of action of negligent supervision, was evidently the result of a doctrinal constraint that has since been removed. When *Nolechek* was decided, the Court of Appeals observed a rule that a defendant could sue a concurrent tortfeasor for contribution only if the latter had a duty of care to the injured plaintiff. *See Garrett v. Holiday Inns, Inc.*, 58 N.Y.2d 253, 257, 447 N.E.2d 717, 719, 460 N.Y.S.2d 774, 776 (1983) (citing cases applying the rule). In *Nolechek* the court apparently feared that allowing the counterclaim to proceed under a theory of negligent supervision would imply that a

child has a cause of action for negligent supervision against his parents. In order to avoid this implication, the court made it clear that the cause of action that it was recognizing applied only to apportionment of liability between the parent and a concurrent tortfeasor. First, the court defined the duty as running from the parent to the concurrent tortfeasor. *See* 385 N.E.2d at 1273–74, 413 N.Y.S.2d at 345–46. Second, the court emphasized that a child cannot sue his parents on the dangerous instrument theory. *See id.* 385 N.E.2d at 1272, 413 N.Y.S.2d at 344.

Five years after *Nolechek* the Court of Appeals explicitly abolished the rule that a defendant could sue a concurrent tortfeasor only if the latter had a duty of care to the plaintiff. In *Garrett v. Holiday Inns, Inc.*, 58 N.Y.2d 253, 447 N.E.2d 717, 460 N.Y.S.2d 774 (1983), the plaintiffs were injured in a fire in the defendant's hotel. The defendant sued the town in which the hotel was located, seeking contribution on the basis that the town had been negligent in allowing the defendant to build the hotel in violation of fire regulations. *Id.* 447 N.E.2d at 719, 460 N.Y.S.2d at 776. Although the plaintiffs had no cause of action against the town, the court held that the defendant had a cause of action for contribution. *Id.* 447 N.E.2d at 721, 460 N.Y.S.2d at 778.

In the view of this Court, if the New York Court of Appeals had heard *Nolechek* after *Garrett*, it would have allowed the counterclaim to proceed on a theory of negligent supervision. *See Cooper v. American Airlines, Inc.*, 149 F.2d 355, 359 (2d Cir.1945) ("federal courts must do their best to guess what the highest state court will do"); *see also Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 281–83 (2d Cir.1981), *cert. denied*, 456 U.S. 927, 102 S.Ct. 1973, 72 L.Ed.2d 442 (1982). Since *Garrett* there is no reason to fear that allowing a negligent defendant to reduce his liability to a child whose parent has also been negligent will imply that a child has a cause of action against his parents for negligent supervision.

The policy that led the Court of Appeals to allow the dangerous instrument counterclaim in *Nolechek* also supports recognition of a counterclaim for negligent supervision. The *Nolechek* court considered the equity of apportioning damages according to fault to be more important than the policy of protecting intrafamily relations. This view of equity is valid regardless of whether the parent's negligence involved a dangerous instrument. The court's statement of the equity underlying the *Garrett* holding was general and not limited to any particular type of harm or degree of negligence:

> If an independent obligation can be found on the part of a concurrent wrongdoer to prevent foreseeable harm, he should be held responsible for the portion of the damage attributable to his negligence, despite the fact that the duty violated was not one owing directly to the injured person.

447 N.E.2d at 721, 460 N.Y.S.2d at 778.

Construing *Nolechek* counterclaims as sounding in negligent supervision will promote more straightforward argument and adjudication. As explained above, in *Nolechek* the Court of Appeals focused less on the "dangerous instrument" formula than on the general negligence principles of foreseeability and reasonableness. If "even a pencil" can be a dangerous instrument, continued application of the "dangerous instrument" formula will invite semantic manipulation of the formula at the expense of the policies that the Court of Appeals sought to serve in *Nolechek*.[1] Therefore, this Court will construe the counterclaims of Hub and Lincoln as sounding in negligent supervision.

The question now is whether Hub and Lincoln have raised issues of fact sufficient to withstand a motion for summary judgment on a counterclaim for negligent supervision. Hub and Lincoln have alleged, and have presented evidence supporting the allegations, that the Smiths knew of the danger that a pool presents to a child of Adam's age and that they knew that Adam could enter the pool without help. *See* Depositions of G. Smith and L. Smith, *cited supra* Section B. These allegations are not insufficient as a matter of law to support a counterclaim for negligent supervision. Therefore, the issue of negligent supervision can be presented to the jury.

## E. DAMAGES

The Smiths claim damages for Adam's pain and suffering, their own mental anguish, medical expenses, the expenses they incurred in travelling to visit Adam in the hospital, funeral and burial expenses, and the loss of Adam's affection, services, and financial support.

There are two types of statutory causes of action for damages in a wrongful death case. Under New York Estates, Powers & Trusts Law (EPTL) § 11–3.2(b) (McKinney Supp.1984–85), the administrator of a decedent's estate can sue for any cause of action that accrued in favor of the decedent before his death. Under EPTL § 5–4.3(a), a decedent's surviving family members can recover "fair and just compensation for the pecuniary injuries resulting from the decedent's death[,] ... the reasonable expenses of medical aid, nursing and attention incident to the injury causing death[,] and the reasonable funeral expenses of the decedent."

It is clear from EPTL § 5–4.3(a) that the Smiths can pursue their claims for recovery of medical, funeral, and burial expenses. The provision in § 5–4.3(a) for "reasonable expenses of ... attention incident to the injury" provides a basis for the Smiths' claim for travel expenses to the extent Adam's required them to visit him in the hospital. The Smiths can also pursue their claim for loss of Adam's future financial support. "In determining pecuniary loss [on such a claim], it is relevant to

---

1. Two New York lower courts have allowed direct claims by children against parents for entrustment of a dangerous instrument, despite the intention of the Court of Appeals that there be no direct cause of action. *See Alessi v. Alessi*, 103 A.D.2d 1023, 478 N.Y.S.2d 397 (N.Y.App.Div. 1984); *Acquaviva v. Piazzolla*, 100 A.D.2d 502, 472 N.Y.S.2d 704 (N.Y.App.Div.1984). *Cf. Nolechek*, 385 N.E.2d at 1272, 413 N.Y.S.2d at 344.

consider proof as to the age, character and condition of the decedent, his earning capacity, life expectancy, health and intelligence, as well as the circumstances of his distributees." *Fell v. Presbyterian Hospital in City of New York*, 98 A.D.2d 624, 625, 469 N.Y.S.2d 375, 377 (N.Y.App.Div. 1983). Finally, damages for the loss of a child's services during minority are available, but damages for loss of affection are not. *Martell v. Boardwalk Enterprises, Inc.*, 748 F.2d 740, 754 (2d Cir.1984). *See also Tinnerhold v. Parke, Davis & Co.*, 411 F.2d 48, 55 (2d Cir.1969).

The claim for damages for Adam's pain and suffering must be viewed as an action under EPTL § 11–3.2(b), *supra*. Because Adam was unconscious from the time of the accident until his death, the dispute concerning this claim is whether there can be damages for pain and suffering of an unconscious person.

The Smiths have presented evidence that Adam felt pain although he was unconscious:

> There were many, many times when we felt that Adam sensed our presence.
>
> . . . .
>
> He, most of the time, was extremely agitated and appeared to be in pain, but when we would come in and sit down next to him, read stories, talk to him, talk about past experiences, he would calm down. He would at times turn his head towards us when we talked, more for Linda than for me.

Deposition of G. Smith, Aug. 16, 1984, p. 14.

■ Damages for pain and suffering are available only for the time when an injured person is conscious. *Blunt v. Zinni*, 32 A.D.2d 882, 883, 302 N.Y.S.2d 504, 506 (N.Y.App.Div.1969), *aff'd*, 27 N.Y.2d 521, 261 N.E.2d 107, 312 N.Y.S.2d 996 (1970). "While it has been held that evidence of moaning and groaning . . . is sufficient to sustain a verdict for conscious pain and suffering, . . . the mere movement of the head, jaw and leg without any manifestation of pain is insufficient." *Parker v. McConnell Manufacturing Co.*, 40 A.D.2d 587, 334 N.Y.S.2d 586, 586–87 (N.Y.App.Div.1972) (quotation marks and citations omitted).

In light of these cases the plaintiffs cannot receive damages for Adam's pain and suffering on the basis of the evidence they have presented until now. It is possible, however, that Adam suffered pain between the time he fell in the water and the time he became unconscious. If the plaintiffs can establish that he did, this would be a basis for awarding damages.

■ Finally, the Smiths seek damages for their mental anguish resulting from Adam's injury and death. Statutory damages are limited to pecuniary loss. *See* EPTL § 5–4.3(a), *supra*. However, New York courts have also recognized a cause of action, under some circumstances, for mental anguish resulting from observing the injury or death of a family member. "[D]amages for [emotional] injuries suffered in consequence of the observation of the serious injury or death" of an immediate family member are awarded if a defendant "negligently exposes a plaintiff to an unreasonable risk of bodily injury or death." *Boysun v. Sanperi*, 61 N.Y.2d 219, 231, 461 N.E.2d 843, 848, 473 N.Y.S.2d 357, 362 (1984). There is no suggestion in this case that the Smiths were in danger of bodily harm when they found their son in the pool. Therefore, they cannot sue for the mental anguish they suffered then or after.

## IV. CONCLUSION

The motions by Hub, Lincoln, and Pacific for summary judgment on the cause of action for failure to warn are granted. Their motions for summary judgment on the cause of action for defective design are denied.

Lincoln's motion for summary judgment on the ground that the plaintiffs cannot establish that the Lincoln ladder caused the accident is denied.

The Smiths' motion for dismissal or summary judgment on the counterclaims by Hub and Lincoln is denied.

The plaintiffs can pursue their claims for damages for Adam's conscious pain and suffering, medical expenses, travel expenses, funeral and burial expenses, and the loss of Adam's services and financial support. Defendants are granted summary judgment on all other damage claims.

IT IS SO ORDERED.