Kathy CROUNSE and David Crounse, Individually and as Parents and Natural Guardians of David Jason Crounse, Jr., an Infant, Plaintiffs,

v.

STIMPSON COMPUTING SCALE COMPANY, Defendant.

STIMPSON COMPUTING SCALE COMPANY, Third–Party Plaintiff,

v.

Larry MONTAYNE, Third–Party Defendant.

No. 84–CV–1506.

United States District Court, N.D. New York.

Dec. 15, 1987.

counterclaim; Richard C. Roxin, Jeffrey N. Miller, of counsel.

Bouck Holloway Kiernan and Casey, Albany, N.Y., for third-party defendant; John R. Casey, of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

### BACKGROUND

On December 18, 1982, the infant plaintiff, David Crounse, Jr., age four, injured his hand in a meatgrinding machine operated by his mother and others in the home of Larry Montayne. David's mother, Kathy Crounse, had permitted David to hold a bag under the machine to catch meat as it was processed. Sometime during the operation David's mother turned off the machine; but, in response to her son's urgings, she turned it on again. She looked away and the boy was injured when he apparently placed his hand into the running machine.

Subsequently, Kathy Crounse and David Crounse, Sr. brought this diversity products liability action, individually and on behalf of their son, against Stimpson Computing Scale Company (Stimpson), the manufacturer of the meatgrinding machine. Stimpson impleaded Larry Montayne and counterclaimed against the plaintiffs in their individual capacities. The counterclaim seeks indemnification and/or contribution on the theory that the accident was caused in whole or in part by the negligence of David's parents, "including but not limited to (their) negligent, unsupervised, entrustment of a dangerous instrumentality ... to the infant-plaintiff, David Jason Crounse, Jr."

David's parents have moved for summary judgment dismissing the counterclaim pursuant to Fed.R.Civ.P. 56(b). By an oral order rendered from the bench on September 15, 1987, the court denied plaintiffs' motion. This Memorandum–Decision serves as the court's opinion in regard to that order.

Rosenblum & Sarachan, Albany, N.Y., for plaintiff; George L. Sarachan, of counsel.

Donohue Donohue & Sabo, Albany, N.Y., for defendant and third-party plaintiff; Kathleen L. Werther, of counsel.

Friedman Maksail Hirschen & Miller, Schenectady, N.Y., for plaintiffs on the

DISCUSSION

Summary judgment shall be granted when the court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The substantive law will identify what facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Whether a dispute of material fact is genuine depends on whether a reasonable juror could return a verdict for the nonmoving party in light of that fact. *Id.*

*Relevant Law*

An initial concern here is the determination of the relevant substantive law. In this diversity action the court must apply the substantive law of New York. The question is what is the present state of that New York law. In their initial papers both parties assumed that New York law presently does not allow a contribution or indemnification claim against parents for the negligent supervision of a minor child. In so doing, the parties relied on the case of *Nolechek v. Gesuale*, 46 N.Y.2d 332, 413 N.Y.S.2d 340, 385 N.E.2d 1268 (1978) which sets forth that general rule as well as the well known exception that a parent may be liable to third parties for negligently entrusting a dangerous instrumentality to his child. *Id.* The parties did not treat, however, the decision of this district in *Smith v. Hub Manufacturing, Inc.*, 634 F.Supp. 1505 (N.D.N.Y.1986), wherein Chief Judge Munson concluded that the New York Court of Appeals would indeed permit an indemnification and/or contribution action against a parent based on that parent's negligent supervision of his child. The court required supplemental briefing in this regard and herein addresses the relevant substantive law.

Contrary to the plaintiffs' assertion, Judge Munson's decision in *Smith* does not violate the Erie doctrine. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny. Absent a recent pronouncement from the New York Court of Appeals, Judge Munson endeavored to predict the current state of New York law in light of the court's obligations under *Erie*. *See e.g. Cooper v. American Airlines, Inc.*, 149 F.2d 355, 359 (2d Cir.1945) (federal courts must do their best to guess what the highest state court will do).

Nevertheless, this court is not bound by Judge Munson's decision and has an independent duty to determine the current relevant New York law. *See EEOC v. Pan American*, 576 F.Supp. 1530, 1535 (S.D.N.Y.1984) In exercising this duty, sixteen months after Judge Munson's opinion in *Smith*, the court determines that the New York Court of Appeals *would not* permit an indemnification/contribution claim against a parent for negligent supervision. This determination is based in part on post *Smith* decisions in the New York appellate courts and in part on a disagreement with the rationale of *Smith*.

The appellate division of the New York State Supreme Court has considered indemnification/contribution claims against parents since Judge Munson's opinion in *Smith*. *See e.g. Wilson v. Sears Roebuck & Co.*, 126 A.D.2d 954, 511 N.Y.S.2d 726 (4th Dep't 1987); *Fowler v. Attenborough*, 124 A.D.2d 780, 508 N.Y.S.2d 499 (2d Dep't 1986). Although these courts have not addressed the rationale of *Smith*, they have steadfastly maintained the traditional view of New York law—that an action for negligent supervision against a parent will not lie. The *Wilson* decision is particularly instructive given the similarity of the facts there to those at bar. There the infant plaintiff, by his father, sued the retailer and the manufacturer of a deep fryer for injuries the infant received when, due to an alleged design defect in the seating for the cover of the fryer, his hands became immersed in boiling fat. The retailer and the manufacturer counterclaimed against the father for contribution. The jury returned a verdict in favor of the infant against the retailer and manufacturer. The jury also returned a verdict in favor of these defendants on the counterclaims, determining that the father was ten percent responsible for the injuries to his son. The Appellate Divi-

sion, Fourth Department, reversed the decision on the counterclaim, holding:

> The fault, if any, on the part of the father was in negligently supervising his infant son by permitting him to come too close to the deep fryer containing the boiling fat. Generally, no cause of action accrues to a third party by reason of the parent's negligent supervision of the child (*Holodook v. Spencer,* 36 N.Y.2d 35, 364 N.Y.S.2d 859, 324 N.E.2d 338). Here the negligence of the father was no more than negligent supervision as was the negligence of the mother who ran hot water into a bathtub and left it unattended, permitting her infant child to fall into the tub and suffer severe burns (*Zikely v. Zikely,* 98 A.D.2d 815, 470 N.Y.S.2d 33, *affd.* 62 N.Y.2d 907, 479 N.Y.S.2d 8, 467 N.E.2d 892). We agree with the *Zikely (supra)* court that "[i]t becomes too easy to avoid the *Holodook* holding by characterizing some act by a parent as an affirmative step in creating the danger for the child. Every time a parent plugged in an iron, started a toaster, or boiled a pot of water on the stove, he would be subjected to potential liability if an unsupervised child came into contact with these common, daily household hazards in a manner which resulted in injury." (*Zikely v. Zikely, supra,* 98 A.D.2d p. 816, 470 N.Y.S.2d 33.)

*Wilson,* 126 A.D.2d at 954–55, 511 N.Y.S.2d at 726–27. Although *Wilson* and the present case are not factually identical, the factual overlap is such that this court will not lightly conclude that current New York law permits an action for indemnification or contribution based on a parent's negligent supervision.

The rationale of *Smith* does not persuade the court to depart from established New York law. The *Smith* rationale for permitting a negligent supervision indemnification/contribution claim is essentially twofold: (1) the *Nolechek* "dangerous instrumentality" exception has become difficult to distinguish from negligent supervision; and (2) the doctrinal reason for not permitting a claim for negligent supervision is no longer present in New York law.

While the court is inclined to agree with the former, it cannot accept the latter.

Judge Munson was understandably concerned about the development of the "dangerous instrumentality" exception to the general rule that parents could not be liable to third parties for negligent supervision. Several New York court have extended this exception to the point where it seems that the exception has swallowed the rule. *See e.g. Lofreddo v. Town of Brookhaven,* 87 A.D.2d 623, 448 N.Y.S.2d 245 (2d Dep't 1982) (seesaw could be a dangerous instrumentality depending on the child's age and abilities). Accordingly, Judge Munson correctly observed that "[c]onstruing *Nolechek* counterclaims as sounding in negligent supervision will promote more straightforward argument and adjudication." *Smith,* 634 F.Supp. at 1511. Simplification is not always adequate grounds for a modification of existing law, however.

Moreover, this court is constrained to disagree with Judge Munson's conclusion that the doctrinal reason for the development of the relevant law was removed by *Garrett v. Holiday Inns, Inc.,* 58 N.Y.2d 253, 460 N.Y.S.2d 774, 447 N.E.2d 717 (1983). Judge Munson observed that when the *Nolechek* "dangerous instrumentality" rule was formulated, a defendant could sue a concurrent tortfeasor for contribution only if the latter had a duty of care to the infant plaintiff. *Smith,* 634 F.Supp. at 1510. He reasoned that this contribution limitation was the main purpose for not permitting a contribution claim for negligent parental supervision:

> In *Nolechek* the court apparently feared that allowing the counterclaim to proceed under a theory of negligent supervision would imply that a child has a cause of action for negligent supervision against his parents. In order to avoid this implication, the court made it clear that the cause of action that it was recognizing applied only to apportionment of liability between the parent and a concurrent tortfeasor. First, the court defined the duty as running from the parent to the concurrent tortfeasor. Second, the court emphasized that a child cannot sue his

parents on the dangerous instrument theory.

*Smith*, 634 F.Supp. at 1510 (citations omitted). The court reasoned further that since *Garrett* "abolished the rule that a defendant could sue a concurrent tortfeasor only if the latter had a duty of care to the plaintiff ... there is no reason to fear that allowing a negligent defendant to reduce his liability to a child whose parent has also been negligent will imply that a child has a cause of action against his parents for negligent supervision." *Id.*

It is true that *Garrett* abolished the rule that a defendant could sue a concurrent tortfeasor only if the latter had a duty of care to the plaintiff; and, consequently, it is true that allowing a claim against a negligent parent would no longer imply that a child has a cause of action against his parents. It is not true, however, that the *Nolechek* court was concerned only with implying a cause of action in favor of a child against his parents. The *Nolechek* court's concern in the area of intrafamilial relations was much broader. The court noted:

> In *Holodook v. Spencer* it was held that an infant child has no cause of action against his parent for inadequate supervision.... The thrust of the holding in *Holodook* is that parents are in the best position to determine how much supervision is right for their children. When children are young, the decisions may involve the extent to which they will be permitted to stray from the immediate physical presence of their parents; when children are older, the decisions are more varied. Children might, at various points in their development, be permitted, and properly so, to use bicycles, lawn mowers, power tools, motorcycles, or automobiles, all of which are, in some contingencies, "dangerous instruments".
>
> The guiding principles, however, remain the same: "The duty to supervise a child in his daily activities has as its objective the fostering of physical, emotional and intellectual development, and is one whose enforcement can depend only on love. Each child is different, as is each parent.... For this reason parents have always had the right to determine how much independence, supervision and control a child should have, and to best judge the character and extent of development of their child."

*Nolechek v. Gesuale*, 46 N.Y.2d 332, 337–38, 413 N.Y.S.2d 340, 385 N.E.2d 1268 (1978) (citations omitted); *see also, Zikely v. Zikely*, 98 A.D.2d 815, 816, 470 N.Y.S.2d 33, 35 (2d Dep't 198) *aff'd* 62 N.Y.2d 907, 479 N.Y.S.2d 8, 467 N.E.2d 892 (1984).

Rather than limiting its concern to suits between family members, the court was concerned with exposing parental decisions to judicial scrutiny, no matter who the plaintiff. Allowing a claim for "negligent supervision" would entail defining the "reasonable parent". Given the recognition that "each child is different, as is each parent", the court determined that such a task would be non-productive as well as intrusive. The court determined, however, that it was willing to interfere with the discretion of parents where a child was entrusted with a dangerous instrumentality, capable of harming others:

> By contrast, it is well-established law that a parent owes a duty to third parties to shield them from an infant child's improvident use of a dangerous instrument, at least, if not especially, when the parent is aware of and capable of controlling its use. This is not because parents are obliged to raise their children in any particular way; it is because however the children are raised, there must be respect for the hazards created for third parties.

*Nolechek*, 46 N.Y.2d at 338–39, 413 N.Y.S.2d 340, 385 N.E.2d 268 (citations omitted).

*Garrett* did nothing to affect New York's concern regarding subjecting parental decisions to judicial scrutiny. There is no less reason now for the courts to decide which actions of a parent are reasonable, and which are not, absent the dangerous instrument exception created in *Nolechek*. Consequently, this court holds that New York law would not permit an indemnification/contribution claim based on negligent parental supervision.

## APPLICATION OF RELEVANT LAW

■ Determining that New York law would not permit an indemnification/contribution claim based on negligent parental supervision does not end the inquiry. The movants are entitled to summary judgment dismissing the counterclaim if they can demonstrate that as a matter of law a claim for negligent entrustment of a dangerous instrument will not lie. The movants argue that while their child was permitted to participate in the meatgrinding process, he was not "entrusted" with the meatgrinder. The court declines to make such a conclusion as a matter of law without further development of the facts.

New York courts are reluctant to determine whether or not a dangerous instrument was negligently entrusted to a child as a matter of law on summary judgment. *See e.g. Craft v. Mid Island Department Stores, Inc.*, 112 A.D.2d 969, 492 N.Y.S.2d 780 (2d Dep't 1985); *Guldy v. Ford Motor Co.*, 99 A.D.2d 625, 472 N.Y.S.2d 180 (3d Dep't 1984). The inquiry appears to be inherently factual. One must consider the dangerousness of the instrument, whether it was "entrusted", and whether the parent was aware of and capable of controlling the child's use of the instrument. *See Nolechek*, 46 N.Y.2d 332, 413 N.Y.S.2d 340, 385 N.E.2d 1268 (1978). The court cannot conclude here, without further development of the facts, that Kathy Crounse did not negligently entrust a dangerous instrument to her son. The motion for summary judgment is denied.

IT IS SO ORDERED.